The People ex rel. Henry C. Henderson, Respondent, v. The Board of Supervisors of the County of Westchester, Appellant.

1. Constitution — Annexation Act — Division of County. Chapter 934 of the Laws of 1895, which provides for the annexation of a part of Westchester county to the city and county of New York, by setting off from the county of Westchester the territory described therein, with its inhabitants and estates, and declaring it annexed to and merged in the city and county of New York, is not rendered unconstitutional by reason of the provisions of the New York Constitution of 1894, conferring upon the legislature power to alter senate districts after a decennial enumeration, and providing that "no county shall be divided in the formation of a senate district except to make two or more senate districts wholly in one county," and that the assembly districts to be apportioned under the Constitution shall remain unaltered until another enumeration shall be made, but that nothing in that section should prevent the division, at any time, of counties and towns, by the legislature, and the provisions continuing the judicial districts until after an enumeration — notwithstanding the facts that the city and county of New York constituted the first judicial district and the county of Westchester was in the second judicial district, and that the county of Westchester was declared by the Constitution to constitute a senate district (the twenty-second).

2. Erection of Counties. The power of the legislature to erect new counties, although not conferred by any express grant, is embraced in the general grant of legislative power and is implied in the prohibition in section 5, article 3, of the Constitution, relating to members of assembly, that "no new county shall be hereafter erected, unless its population shall entitle it to a member."

Smith — Vol. I.    1

**2**     People ex rel. Henderson *v.* Supervisors.     [Sept.,

Statement of case.     [Vol. 147.

3. Statute — Constitutionality. A statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible, the statute will be upheld.

4. Division of Counties. The insertion in the Constitution, as an addition to the section relating to assembly districts, of the clause: "Nothing in this section shall prevent division at any time of counties and towns, and the erection of new towns and counties by the legislature," indicates an intention to leave the legislature free to exercise the power to change the boundaries of counties and towns, and to erect new towns at any time in its discretion. (*Lanning* v. *Carpenter*, 20 N. Y. 447, and *Kinne* v. *City of Syracuse*, 3 Keyes, 110, discussed.)

5. Senate District — Change of Boundaries. Under the Constitution of 1894, the act in question (Chap. 934 of Laws of 1895), as an act of annexation, was within the constitutional power of the legislature, although it changed, as to the twenty-second senate district, the county boundaries of the district, but such effect should be given to the act as will least disturb the general plan that senate districts shall be bounded by county lines, and this will be accomplished by regarding the annexed territory as still a part of that district for the election of a senator.

6. Construction of the Act — Assembly Districts. A construction of the act of annexation which affirms its validity as such, but leaves the annexed territory part of the twenty-second senate district and of the second judicial district and department, and within the jurisdiction of the board of supervisors of Westchester county for the purpose of forming assembly districts, most nearly harmonizes the provisions of the Constitution relating to senate, judicial and assembly districts and the power possessed by the legislature to divide counties and towns.

7. Municipal Rights. The Annexation Act provides that the portion of Westchester county annexed thereby shall thereafter constitute a part of the city and county of New York "in every respect and to the same extent" as if it had originally been included therein. *Held*, that the words quoted, read in connection with the context, were satisfied by construing them as referring to municipal burdens and municipal rights in which the annexed territory and its inhabitants were to share.

8. Elections. *Held*, that the voters in the annexed territory will be entitled to vote for senator, member of assembly and justices of the Supreme Court, the same as though the Annexation Act had not been passed, and that elections in the annexed territory will of necessity be conducted under the control of the election officers of the city and county of New York, and the returns will be made to the proper authorities of Westchester county.

(Argued September 17, 1895: decided September 27, 1895.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made July 26, 1895, which affirmed an order of Special Term directing the issuance of a peremptory writ of mandamus, requiring the board of supervisors of Westchester county to re-assemble and divide the said county into three assembly districts, in accordance with the provisions of the Constitution of the State of New York.

The appeal was heard September 17, 1895, at a special session of the court, convened in accordance with the provision of the Constitution (Art. 3, § 5), that " any court before which a cause may be pending involving an apportionment, shall give precedence thereto over all other causes and proceedings, and if said court be not in session, it shall convene promptly for the disposition of the same."

On September 27, 1895, the court rendered the following decision:

" 1st. That the act, chapter 934 of the Laws of 1895, annexing certain territory taken from the county of Westchester to the city and county of New York is constitutional.

" 2nd. That by virtue of the act the annexed territory became, for all purposes of local government and administration, a part of the city and county of New York, except as otherwise provided therein.

" 3rd. That the act did not operate to change the territorial boundaries of the twenty-second senate district, established by the Constitution of 1894 ; or to take the annexed territory out of the jurisdiction of the board of supervisors of Westchester county, in forming assembly districts pursuant to section 5 of article 3 of the Constitution; or to change the boundaries of the second judicial district, as they existed when the act was passed, or the boundaries of the second judicial department, as established by chapter 376 of the Laws of 1895.

" 4th. That for the purpose of voting for senator, members of assembly and justices of the Supreme Court, the annexed territory is to be regarded as part of the twenty-second senate district, and of an assembly district to be formed by the board

of supervisors of Westchester county, and of the second judicial district.

" 5th. That the public property in the annexed territory vested under the act of annexation in the mayor, aldermen and commonalty of New York, as provided in said act.

" 6th. That it became the duty of the board of supervisors. of Westchester county, at its meeting on the second Tuesday of June, 1895, to include the annexed territory within one of the three assembly districts allotted by the Constitution to the county of Westchester.

" 7th. That having omitted to perform their duty, the mandamus was properly granted.

" The order and judgment of the General Term is, therefore, affirmed, with costs to the relator."

Thereafter, on October 8, 1895, on the re-assembling of the court in regular session, the opinion was handed down, in which the facts, so far as material, are stated.

*William H. Robertson* for appellant.    The territory detached from the county of Westchester, and annexed to the city and county of New York, by chapter 934 of the Laws of 1895, was a part of the city and county of New York, and not a part of the county of Westchester, on the 11th of June, 1895.    (Laws of 1895, chap. 934; *People ex rel.* v. *Carter*, 135 N. Y. 473; Const. art. 3, §§ 1, 5; *Bank of Chenango* v. *Brown*, 26 N. Y. 467; *People* v. *Morrell*, 21 Wend. 563; *People ex rel.* v. *Flagg*, 46 N. Y. 401; *Kinne* v. *City of Syracuse*, 3 Keyes, 110; Const. of 1846, art. 3, § 5; *Howard* v. *McDiarmid*, 26 Ark. 100; *Pulaski County* v. *County Judge of Saline County*, 37 id. 339; *Bittle* v. *Stuart*, 34 id. 224, 232.)    The question of altering judicial districts or departments is not involved in this controversy.    (*Rumsey* v. *People*, 19 N. Y. 41; *Lanning* v. *Carpenter*, 20 id. 447.) The legislature had the inherent power to make the division in question; the Constitution conferred upon it that power, and unless prohibited by the Constitution it could make the division in question.    The only apparent restriction in the

1895.] People ex rel. Henderson v. Supervisors. 5

N. Y. Rep.]                    Points of counsel.

light of the construction placed on section 5, article 3 of the Constitution of 1846, as amended in 1874, is only an apparent one, and has no effect upon the power conferred upon the legislature to make the division in question. (*Howard* v. *McDiarmid*, 26 Ark. 100; *Bittle* v. *Stuart*, 34 id. 224, 232; *Pulaski County* v. *County Judge of Saline County*, 37 id. 339.

*William D. Guthrie* for respondent and for appellant in *Town of Westchester* v. *Haffen*, and *Village of Williamsbridge* v. *Haffen*, argued with this case. The Constitution was adopted in order to permanently establish the fundamental law of the state, and any legislation inconsistent with its express or implied provisions is invalid. (*Minor* v. *Happersett*, 21 Wall. 162; Const. U. S. art. 4, § 4; *Oakley* v. *Aspinwall*, 3 N. Y. 547, 568; *Newell* v. *People*, 7 id. 9, 97; *People* v. *Draper*, 15 id. 532, 557; *Lanning* v. *Carpenter*, 20 id. 447; *In re Lee's Bank*, 21 id. 9, 11; *People ex rel.* v. *Albertson*, 55 id. 50, 55, 64; *People ex rel.* v. *Porter*, 90 id. 68, 75; *People* v. *N. Y. C. R. R. Co.*, 24 id. 485; *M. Bank* v. *Van Dyck*, 27 id. 400; *People ex rel.* v. *Potter*, 47 id. 375; *Settle* v. *Van Evera*, 49 id. 280; *People* v. *Fancher*, 50 id. 288; *People ex rel.* v. *Wemple*, 125 id. 485, 489; *People ex rel.* v. *Rice*, 135 id. 473, 521; *Calder* v. *Bull*, 3 Dallas, 386, 398, 399; *Rhode Island* v. *Massachusetts*, 12 Pet. 657, 722; *Ex parte Yarbrough*, 110 U. S. 651, 658.) The division of the state into counties has always existed, and the policy of preserving and perpetuating the unity of interest and local associations in counties has been observed in every Constitution. (*People ex rel.* v. *Porter*, 90 N. Y. 68; *People ex rel.* v. *Draper*, 15 id. 532; *Coutant* v. *People*, 11 Wend. 511, 513; *Clark* v. *People*, 26 id. 599, 604; *Income Tax Cases*, 157 U. S. 429, 562; 4 Record Const. Conv. 1873; Const. art. 6, §§ 14, 15; Const. arts. 3, 5, §§ 26, 27; Const. art. 10, § 1; Code Crim. Pro. §§ 102, 111, 115; *In re Gertum* v. *Bd. Suprs.*, 109 N. Y. 170.) In making an apportionment which rigidly adhered to county lines under all circumstances, the Constitution of 1894 differed from the Constitution then existing. The framers of the new Constitution and the people who adopted it

intended to base such apportionment permanently and unalterably upon the county system. That purpose would be defeated by the act of 1895. (*People ex rel.* v. *Rice*, 135 N. Y. 473; Const. art. 3, §§ 3, 4, 5; Const. art. 2, § 1; *Lanning* v. *Carpenter*, 20 N. Y. 447; *Rumsey* v. *People*, 19 id. 41; *Atty.-Gen.* v. *Holihan*, 29 Mich. 116; *Kinne* v. *City of Syracuse*, 3 Keyes, 110; *Sweet* v. *City of Syracuse*, 129 N. Y. 316, 330; *People ex rel.* v. *Angle*, 109 id. 564, 568, 575; *People ex rel.* v. *Potter*, 47 id. 375, 380; *Brown* v. *Maryland*, 12 Wheat. 419.) The existing provisions of law regulating elections were adopted and continued in force by express constitutional provisions (Art. 2, § 6). Such provisions cannot be observed if the integrity of counties is to be disturbed. The scheme of the Constitution was based upon the continuance of this election machinery until duly changed. It has not been changed. (Laws of 1892, chap. 569, § 12; *In re Gertum* v. *Bd. of Suprs.*, 109 N. Y. 170; Laws of 1892, chap. 569, §§ 117, 135.) The act of 1895 violates the provisions of the Constitution as to the judicial districts and departments. (Const. art. 6, § 1; Laws of 1876, chap. 24; Code Civ. Pro. §§ 222, 340, 982, 984, 2456; *People ex rel.* v. *Porter*, 90 N. Y. 68; Laws of 1881, chap. 415; Code Crim. Pro. §§ 223, 1035; Laws of 1882, chap. 410, §§ 1638, 1663, 1667; *Geraty* v. *Reid*, 78 N. Y. 64; *L. F. Ins. Co.* v. *Remmers*, 29 La. Ann. 419; *Commonwealth* v. *Gamble*, 62 Penn. St. 34; Const. art. 6, § 2.) The legislation of 1873–1874 affords no support to the contention that the act of 1895 is constitutional. (Laws of 1873, chap. 613; Laws of 1874, chap. 329; Laws of 1876, chap. 24; *Rumsey Case*, 19 N. Y. 41; *Smith* v. *People*, 47 id. 330; Const. 1846, art. 3, §§ 4, 5; Const. 1846, art. 6, §§ 2, 4; Const. N. Y. art. 3, § 17; *People ex rel.* v. *Banks*, 67 N. Y. 568; *People ex rel.* v. *Squire*, 107 id. 593; *People ex rel.* v. *Lorillard*, 135 id. 285.) The legislature intended the act to annex the territory for all purposes, and that intention cannot be pruned down within the limits of what might have been constitutional. (*Wynehamer* v. *People*, 13 N. Y. 378; *U. S.* v. *Reese*, 92 U. S. 214; *Trade Mark Cases*, 100 id. 82.) A

peremptory writ of mandamus will issue against a board of supervisors under the circumstances set forth in the moving papers. (*Baird* v. *Suprs.*, 138 N. Y. 95, 115 ; *People ex rel.* v. *Rice*, 129 id. 449, 453 ; *People ex rel.* v. *Suprs.*, 142 id. 271, 277 ; *People ex rel.* v. *Rice*, 144 id. 249, 264 ; *U. L. T. Co.* v. *Grant*, 137 id. 7, 10 ; *Village of Hyde Park* v. *Chicago*, 124 Ill. 156, 160 ; *Gardner* v. *Village of Newburgh*, 2 Johns. Ch. 162, 168 ; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10, 21 ; *W. W. Mfg. Co.* v. *Shanahan*, 58 Hun, 50, 55 ; *Campbell* v. *Seaman*, 63 N. Y. 568 ; *McHenry* v. *Jewett*, 90 id. 58 ; *People* v. *O'Brien*, 111 id. 1 ; *In re McGinness*, 13 Misc. Rep. 714.)

*Wm. B. Hornblower* and *McCready Sykes* for appellant in case of *People ex rel. Field* v. *Board of Aldermen of the City of New York*, argued with this case. Chapter 934 of the Laws of 1895 is constitutional. (*Rumsey* v. *People*, 19 N. Y. 41 ; Const. art. 3, § 5 ; id. art. 8, § 2 ; *Howard* v. *McDiarmid*, 26 Ark. 100 ; *Bittle* v. *Stuart*, 34 id. 224 ; *Pulaski County* v. *County Judge*, 37 id. 339.) The objection that judicial districts are divided, and that the act is thus unconstitutional is not well taken. (Const. 1846, art. 6, §§ 4, 16 ; Const. N. Y. art. 6, § 1.) There is no force in the point that the act is unconstitutional because it refers to other acts which are not in terms re-enacted and made a part of the act in full. (*People ex rel.* v. *Lorillard*, 135 N. Y. 285 ; *Curtin* v. *Barton*, 139 id. 505–514.) The act being constitutional and the territory in question having been duly taken out of the county of Westchester and annexed to the city and county of New York prior to the meeting of the board of aldermen on the 11th day of June, 1895, to apportion assembly districts, it was the duty of that board to deal with the then existing state of affairs, and to divide the county of New York as it then existed and not as it had existed theretofore. (*People* v. *Morrell*, 21 Wend. 563.) In determining the constitutionality or unconstitutionality of a statute, the court will inquire into its general character and effect, and will consider facts of

which it can take judicial notice as bearing upon the meaning
and intent of the act. (*In re Jacobs*, 98 N. Y. 98; *People* v.
*Marx*, 99 id. 377; *People* v. *Gillson*, 109 id. 389; *Health
Dept.* v. *Rector, etc.*, 145 id. 32.)

*Francis M. Scott* and *John Proctor Clarke* for respond-
ents in cases of *People ex rel. Field* v. *Board of Aldermen,
etc.; The Town of Westchester* v. *Haffen*, and *The Village
of Williamsbridge* v. *Haffen*, argued with this case. The
legislature possesses the whole legislative power of the people
except so far as limited by the Constitution. (*People ex rel.*
v. *Flagg*, 46 N. Y. 401; *Bank of Chenango* v. *Brown*, 26
id. 467; *People* v. *Morrell*, 21 Wend. 563; Const. N. Y.
art. 3, §§ 15–29.) The convention made a complete apportion-
ment as to senators and assemblymen. (Const. art. 3, §§ 2, 3,
4, 5; Const. of 1846, art. 3, § 3.) The provisions of the Con-
stitution cited as prohibiting the division of counties are
applicable solely to the political division thereof for apportion-
ment purposes, and do not limit or affect the inherent power
of the legislature to divide and sub-divide the territory of the
state for local and municipal purposes. (Const. art. 3, §§ 4,
5; *People* v. *Morrell*, 21 Wend. 563; *Rumsey* v. *People*, 19
N. Y. 41; *People ex rel.* v. *Carter*, 135 id. 473; Laws of
1873, chap. 613; Laws of 1874, chap. 329; *People* v. *Flani-
gan*, 66 N. Y. 237; *Ehrgott* v. *Mayor, etc.*, 96 id. 264.)

ANDREWS, Ch. J. This controversy involves the constitu-
tionality of chap. 934 of the Laws of 1895, approved June
6, 1895, and which took effect the same day, annexing a por-
tion of the county of Westchester to the county of New
York. The annexed territory at the time of the annexation
consisted of a town and parts of towns, and of two villages
in the county of Westchester, having a population of upwards
of 13,000 persons, excluding aliens, of whom about 2,500
were duly qualified voters. The act declared that the terri-
tory therein described, " with the inhabitants and estates
therein, is hereby set off from the county of Westchester and

annexed to, merged in and made a part of the city and county of New York and of the twenty-fourth ward of said city and county, subject to the same laws, ordinances, regulations, obligations and liabilities, and entitled to the same rights, privileges, franchises and immunities in every respect and to the same extent as if said territory had been included within said city and county of New York at the time of the grant and adoption of the first charter and organization thereof and had so remained to the passage of this act, and except as may be modified by this act, as if such territory had been included within said twenty-fourth ward by the provisions of chapter 613 of the Laws of 1873, entitled ' An act to provide for the annexation of the towns of Morrisania, West Farms and Kingsbridge in the county of Westchester to the city and county of New York, and the several acts amendatory thereof, and had so remained up to the passage of this act.' " The board of supervisors of Westchester county assembled on the second Tuesday of June, 1895 (six days after the act of annexation took effect), pursuant to the requirement of section 5, art. 3, of the new Constitution, to divide the county into three assembly districts, equal to the number of members of assembly apportioned to Westchester county, and made the division of the then existing territory of the county into three assembly districts, excluding from the division the territory embraced in the act of annexation. The board of aldermen of the city of New York on the same day assembled and divided the city and county of New York into assembly districts, but in the division no notice was taken of the annexed territory, and the division was confined to the territory of the city and county of New York as it existed before the act of annexation. The result of the action of the two boards was, therefore, to leave the annexed territory unattached to any assembly district. Thereupon this proceeding was instituted to compel the board of supervisors of Westchester county to re-assemble and re-form the assembly districts by including in the division the territory taken from the county of Westchester by the act of annexation. The proceeding was taken on the view that, notwithstanding the act,

2

the annexed territory remained a part of Westchester county for assembly district purposes. A mandamus proceeding was also instituted in the city and county of New York to compel the board of aldermen of that city to re-assemble and include in an assembly district to be found therein the territory added to the county by the act of annexation. This proceeding was based on the contention that the act of annexation operated from the time of its passage to make the excluded territory for all purposes, including the formation of assembly districts, a part of the city and county of New York. In addition to the two proceedings mentioned, actions were commenced in the county of Westchester, one by the town of Westchester and one by the village of Williamsbridge, which town and village were included in the act of annexation, against certain officers of the street and police departments of the city of New York, who, acting under the authority of the city, had intermeddled with the public property of the town and village, to obtain an injunction to restrain them from interfering therewith. The act of annexation by its terms vests in the mayor, aldermen and commonalty of the city and county of New York all the public property in the annexed territory, and these actions were based upon the theory that the act of annexation was wholly unconstitutional and void for all purposes whatever. The mandamus proceeding against the board of aldermen of the city and county of New York has been heard and decided by the Special and General Terms in the first district and department, and the other mandamus proceeding and the injunction actions by the courts in the second department, and all the cases have been argued before us on appeal. The courts below have concurred in the opinion that the annexed territory should be treated as a part of Westchester county in the formation of assembly districts, and that it was the duty of the board of supervisors of Westchester county to have included it in one of the three districts in that county. The courts in the second department affirmed the constitutionality of the act, chapter 934 of the Laws of 1895, as an act of annexation, but held that the annexed territory

is still a part of the 22d senate district, and that for the pur-
pose of voting for senator, assemblyman and judges of the
Supreme Court, it must still be considered as a part of West-
chester county.  The learned judge who delivered the opinion
at Special Term in the case arising in the city and county of
New York, held substantially the same view as that of the
judges in the second district.  The General Term of the first
department did not pass upon the question of the constitution-
ality of the act, but limited itself to deciding the precise ques-
tion presented in that case, viz., whether the annexed territory
should be included in an assembly district in the city and
county of New York, or in the county of Westchester.  The
appeals before us, taken together, cover the whole field of
controversy, and they impose upon the court the duty of
finally determining the grave and difficult questions presented.

The main grounds of attack upon the constitutionality of
the Annexation Act are (1) that it changes the twenty-second
senate district, which by the Constitution was declared to con-
sist of the county of Westchester, the claim being that no
alteration in county lines can be made without changing the
senate district, since by the constitutional arrangement the
county of Westchester with its established boundaries at the
time of the adoption of the Constitution of 1894 and the senate
districts, were and must remain inseparably associated until
after another enumeration; (2) that taking from Westchester
county a part of its territory changes the basis of the appor-
tionment of members of assembly made by the Constitution
to the county of Westchester and nullifies the requirement
that each assembly district shall be wholly within a senate dis-
trict formed by the Constitution, because it would become
impossible of execution if the act is valid.  The twenty-second
senate district, it is claimed, existing after the act took effect,
would not be the same district defined in the constitutional
apportionment, viz., the county of Westchester as then organ-
ized; (3) the act changes the lines of judicial districts and
departments theretofore established, in defiance of constitu-
tional restrictions.

It becomes necessary in considering these objections to refer
to the provisions of the new Constitution. The Constitution,
by section 3, article 3, divides the entire territory of the state
into fifty senate districts, corresponding to the number of
senators to be elected, consisting of one or more counties or
of subdivisions of a county. It declares that the twenty-
second senate district shall consist of the county of West-
chester, and it divides the city and county of New York into
twelve senate districts, bounding each of the twelve districts
by streets and avenues, or by streets, avenues and public
waters, except that in constituting the twenty-first senate
district (one of the twelve districts) a general clause is added
to the description by streets and avenues, which includes
therein territory taken from the county of Westchester and
annexed to the city and county of New York by the act
chapter 613 of the Laws of 1873, which territory, it is said,
had not been mapped and laid out with streets or avenues on a
permanent plan when the convention prepared the legislative
article. Section 4 of the same article provides that an enu-
meration of the inhabitants of the state shall be taken in the
year 1905, and every tenth year thereafter, and directs that
the senate districts " shall be so altered by the legislature at the
first regular session after the return of every enumeration, that
each senate district shall contain as nearly as may be an equal
number of inhabitants, excluding aliens, and be in as compact
a form as possible, and shall remain unaltered until the return
of another enumeration, and shall at all times consist of con-
tiguous territory, and no county shall be divided in the forma-
tion of a senate district except to make two or more senate
districts wholly in one county." The section also pro-
hibits the division of a town, or block in a city inclosed
by streets or public ways, in the formation of a senate
district. By section 1 of the same article the assembly is to
consist of one hundred and fifty members. Section 5 deals
with the subject of apportionment of members of assembly,
and prescribes the manner of constituting assembly districts
in counties entitled to more than one member. It perpetu-

ates the single district system, and declares that each county theretofore established (counting Fulton and Hamilton counties as one county) shall be entitled to one member of assembly. It directs that the members of assembly shall be apportioned by the legislature at the first regular session, after the return of every enumeration, " among the several counties of the state as nearly as may be, according to the number of their respective inhabitants, excluding aliens." It prescribes the ratio for apportionment and how members shall be apportioned on remainders. The section itself makes the first apportionment. It declares that, " until after the next enumeration, members of assembly shall be apportioned among the counties as follows ; " and apportions thirty-five members to the county of New York and three members to the county of Westchester. The Constitution does not, as in the case of senate districts, divide counties entitled to more than one member into assembly districts. It imposes that duty upon the boards of supervisors, except that in any city embracing an entire county and having no board of supervisors, the common council or the body exercising the powers of a common council is to make the division. This latter provision, under existing circumstances, is applicable only to the city and county of New York. The board of supervisors of any county entitled to more than one member of assembly, or in the city and county of New York, the common council of that city, is required to " assemble on the second Tuesday of June, 1895, and at such time as the legislature making an apportionment shall prescribe, and divide such counties into assembly districts, as nearly equal in number of inhabitants, excluding aliens, as may be, of convenient and contiguous territory in as compact form as practicable, each of which shall be wholly within a senate district formed under the same apportionment, equal to the number of members of assembly to which such county shall be entitled ; " and (the section adds) : " Such apportionment and districts shall remain unaltered until another enumeration shall be made as herein provided." It prohibits the division of a town or block in a city in form-

ing assembly districts, and following the provisions above enumerated are the words : "Nothing in this section shall prevent the division, at any time, of counties and towns and the erection of new towns by the legislature."

Section 1, article 6, of the new Constitution, continued the existing judicial districts "until changed as hereinafter provided," and authorizes the legislature to alter the judicial districts "once after every enumeration of the inhabitants of the state." Section 2 of the same article declares that the legislature shall divide the state into four judicial departments; "The first department shall consist of the county of New York, the others shall be bounded by county lines." In obedience to this mandate of the Constitution the legislature on the 13th day of April, 1895, two months prior to the act of annexation now in question, divided the state into four judicial departments, the first consisting of the county of New York, and the second "of the counties embraced within the present second judicial district," of which Westchester county was one.

The act of annexation, as has been stated, set off from the county of Westchester the territory described therein, with its inhabitants and estates, and declared that it was annexed to and merged in, and made a part of the city and county of New York. As a necessary consequence, it divided the county of Westchester and changed the boundary lines both of the county of Westchester and the county of New York. It preserved, however, the existing arrangements for the collection of unpaid taxes and assessments in the territory annexed, and the sale of lands therefor, and provided for the equitable apportionment and for the payment by the city and county of New York, of such portion of the debts and obligations of the county of Westchester and of the towns and villages taken from Westchester, as should be fixed by the apportionment. If the act is valid, the territory taken from Westchester county became from the time of the approval of the act on the 6th day of June, 1895, except as otherwise specified therein, for all purposes of local government and administration, a part of

the city and county of New York, and it was made subject
to the burdens and became entitled to the rights, privileges
and immunities, " in every respect and to the same extent"
as if the annexed territory had originally been a part of that
city and county and had been included in the territory
annexed thereto from the county of Westchester by the act
chapter 613 of the Laws of 1873 and the acts amendatory
thereof.

The Constitution vests in the senate and assembly the
legislative power of the state (Const. art. 3, sec. 1), and the
power to divide counties or towns, and to erect new counties
and towns, or to change their boundaries, is legislative in its
character and is conferred upon the senate and assembly by
the general grant of legislative power; and unless restrained
in a particular case by other provisions or arrangements of
the Constitution, the time and mode of its exercise is in the
discretion of the legislature. The power of the legislature to
erect new counties, although not conferred by any express
grant, is implied in the prohibition in section 5, art. 3,
relating to members of assembly, that " no new county shall
be hereafter erected unless its population shall entitle it to a
member." The power is by this clause both recognized and
limited. The power to divide towns or counties, or to erect
new towns, was not given by any direct language in the Con-
stitution of 1846, but it was exercised in many cases by the
legislature as a part of its ordinary legislative power. We
shall have occasion to refer to some provisions in the Con-
stitution of 1894, in which the existence of this power is
expressly recognized.

The act of annexation now in question is, therefore, pre-
sumptively valid, because it is an act of legislation within the
ordinary scope of legislative power, and for the further
reason that the presumption of constitutionality attaches to
every statute enacted by the legislature. The duty and the
burden of establishing that the act of annexation is uncon-
stitutional rests, therefore, upon the parties asserting its
unconstitutionality. It needs no citation of authorities in

support of the doctrine that a statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and that until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation has been found impossible, the statute will be upheld.

The senate districts are established by the Constitution. The whole territory of the state is, by section 3, art. 3, divided into senate districts upon a plan which preserves the unity of the county in their formation, no county being divided except to constitute two or more senate districts within the same county. The rule that counties were not to be divided in the formation of senate districts, except in the cases specified, was followed by the convention, and it was made obligatory in all future apportionments. We think it is plain that the general scheme of the Constitution was to associate senate districts with county organizations and to make them co-terminous with county boundaries, and that when by the Constitution it was declared that a senate district was to consist of certain specified counties, there was established an organic relation between the counties as they existed territorially at the adoption of the Constitution and the senate districts thereby established, and that a subsequent change of county boundaries by the legislature, whereby a senate district would comprise a part of two counties, would violate the constitutional plan, unless permitted by some other provision of the instrument. The claim that the counties determine the senate districts merely in the sense that their boundaries on a certain day were used as convenient measurements for the districts ignores the constant relation between counties and senate districts which has been maintained during the whole existence of the state government. This was equally true of the large senate districts established by the Constitutions of 1777 and 1821, and of the single senate districts under the Constitution of 1846 and the Constitution of 1894. The general principle that the apportionment of representatives in the legislature is to be made upon the basis of

population has been modified to preserve the autonomy of counties and their relation to representative senate districts. There could doubtless be a more exact mathematical division of population for the purpose of legislative representation, if the boundaries of counties were disregarded. But the principle of equality in representation is to some extent subordinated to the purpose of making counties the representative territorial units in the apportionment of senators. It is not difficult to trace the origin of this system embodied in our State Constitution. It has its root in the prominence given to county government and to county organizations from the earliest period of our history and to the habits and associations of the people formed under the county system. The territory of the state in colonial times was divided into counties. Under the State Constitution the county has been the agency of local government and administration in county affairs. Through the counties the state collects its taxes, and through county officers the judgments of its courts have been executed. Powers of local legislation from the beginning have to a greater or less extent been exercised by county boards, and the inhabitants of a county have been accustomed to act together in public affairs and in the promotion of local interests. It was not for mere convenience, therefore, that senate districts established by the Constitution were made to consist of counties. There was inserted in the Constitution of 1821 a provision which has been incorporated into every subsequent State Constitution, that "no county should be divided in the formation of a senate district," a provision which, though addressed to the legislature and applicable to future apportionments only, is an emphatic formulation of the policy which has uniformly prevailed.

We assent, therefore, to the proposition that when the Constitution declares that the twenty-second senate district shall consist of the county of Westchester, it was a declaration that the county of Westchester as then organized, with its then existing territorial limits, should constitute that district, and that a change of the territorial boundaries of the county would

change the senate district as established, because neither the whole district nor any part of it was by the general scheme to remain outside of the county organization. The answer that the word "county" in art. 3, sec. 3, constituting Westchester county as the twenty-second senate district, refers to that county as a political organization, and that so long as the county exists, although shorn of a part of its territory, the part remaining constitutes the district, must be rejected. The claim assumes that by the act of annexation the exscinded territory became, for senate district purposes, a part of the city and county of New York. The specific boundaries in the Constitution of the senate districts in the city and county of New York by streets, avenues and public waters, with the general clause in connection with the boundaries of the twenty-first district, inserted to embrace territory in the city not capable of a description by street boundaries, do not admit of enlargement so as to include territory subsequently added to the city by the legislature, and the added territory would form no part of any senate district in the state if dissevered from the twenty-second district. But there is a broader objection to an interpretation of the Constitution which would permit the legislature to take territory from one county and senate district and annex it to another senate district. It would interfere with the basis of apportionment founded upon population, upon which the convention acted, and enable the legislature at any time, by changing the boundaries of counties, to subvert the approximate equality in population of the senate districts which it was the aim of the Constitution to establish. It would place it in the power of the legislature to undo and defeat the work of the convention under guise of changing county boundaries. The Constitution gave to the county of Westchester one senator and three members of assembly, and the apportionment was fixed on the basis of its then existing population. The argument assumes that Westchester county would continue until another enumeration entitled to one senator and three members of assembly, although the greater share of its population

1895.]    People ex rel. Henderson *v.* Supervisors.    **19**

N. Y. Rep.]    Opinion of the Court, per Andrews, Ch. J.

may, by an act of annexation, be transferred to another county, and although the county to which it is annexed will gain no additional representation. The consequences which might flow from the interpretation of the Constitution just considered forbid its adoption. It would open the door for legislative interference with representative districts for partisan purposes under the guise of changing the boundaries of counties, the prevention of which was the object of several provisions of the Constitution.

Leaving out of view for the present a consideration of special clauses in the new Constitution relating to the division of counties and towns, and assuming that the legislative power over the subject is that only which is embraced in the general grant of legislative power, we have on the one hand senate districts consisting of counties constituted and defined by the Constitution, and on the other a general legislative power to change the boundaries of counties and towns and to erect new ones. The Constitution contains no express declaration restraining the legislature from altering the senate districts established by that instrument, intermediate a decennial enumeration. It requires the legislature so to alter the districts as to produce equality as near as may be, at the first regular session after the return of every enumeration, but no power is given by express language to alter them at any other time. If the validity of the act of annexation now in question depends solely upon the force of the general grant of legislative power, the case of *Lanning* v. *Carpenter* (20 N. Y. 447) is an authority against its constitutionality. That case arose under the Constitution of 1846 and involved the validity of the law passed in 1854 (intermediate two decennial periods), creating Schuyler county out of parts of three counties, and the new county as formed embraced parts of two senate districts and of two judicial districts. The act was held by a divided court to be unconstitutional for the reason that the existing judicial, senate and assembly districts organized by or in pursuance of the Constitution then in force, continued unchangeable until after the next succeeding enumeration and that a change of county

boundaries, which should leave senate districts not bounded by county lines, was a change in contravention of the constitutional requirement that they should consist of entire counties. It was claimed in support of the act that the power to erect a new county was vested in the legislature under the general grant of legislative power and that such incidental and temporary changes in the county boundaries of judicial and legislative districts as might result from the exercise of this power did not invalidate the act. The court rejected this view, and held that the general power must yield to the specific regulations for the formation of senate and judicial districts, and that the power of the legislature to erect a new county, if it involved a change in the boundaries of senate and judicial districts by county lines, could only be exercised contemporaneously with the return of a new enumeration. In the subsequent case of *Kinne* v. *City of Syracuse* (3 Keyes, 110) an act changing the boundaries of the city of Syracuse, passed in 1858, by annexing territory belonging to an assembly district in that county to territory in another assembly district therein, was held to be invalid on the ground that it was an alteration of assembly districts intermediate two decennial periods, in violation of the Constitution.

But the question as to the validity of the Annexation Act of 1895 does not arise under the Constitution of 1846. The Constitution of 1894 contains provisions not found in the Constitution of 1846, which in our judgment materially affect the question now to be determined. When the constitutional commission of 1873 assembled these cases had been decided. The legislative article proposed by that commission divided the state into eight senate districts, as under the Constitution of 1821, and apportioned the members of assembly among the counties as under the Constitution of 1846. It appears from the journal of the commission that after the legislative article had been reported by the committee having this subject in charge, on motion of a member from the seventh judicial district, who resided in one of the counties from which Schuyler county was taken, the article was by unanimous consent amended

by adding to the section relating to the apportionment of members of assembly and the constitution of assembly districts the clause : " Nothing in this section shall prevent division at any time of towns and counties to be effectual for the purpose of town and county administration." (See Journal of Constitutional Commission, pg. 408.)  Subsequently, when the article was reported by the committee on revision, this clause was changed so as to read : " Nothing in this section shall prevent division at any time of counties and towns and the erection of new towns and counties by the legislature," and in this form was adopted by the people.  But the plan of eight senate districts was rejected.  The clause in a form slightly changed is incorporated in the present Constitution.  There was no similar clause in the Constitution of 1846.  There can be no doubt that this provision was inserted to overrule the doctrine of the *Kinne* case and to relieve the legislature in the exercise of the power to divide counties and towns from the restriction imposed by the decision in that case.  The power, it declares, may be exercised " at any time."  It is neither restricted as to time, nor by the relation which the dissevered territory may bear to existing assembly districts. Under this power a town may at any time be taken from one county and added to another.  Towns belonging to one assembly district may be divided, and the part taken away may be added to a town in another assembly district.  Such changes would not violate the prohibitions that " no town shall be divided in the *formation* of assembly districts," and that assembly districts once formed " shall remain unaltered until another enumeration," on the construction that the assembly districts existing when a division is made remain territorially the same, notwithstanding the division.  It is true that the clause is inserted in the section relating to the apportionment of assemblymen and the creation of assembly districts, and declares that " nothing in this section shall prevent," etc. Upon this reading is based an argument that the rule in *Lanning* v. *Carpenter*, as applicable to the change of senate districts, remains unaffected.  But we think the insertion of this

clause indicates an intention to leave the legislature free to exercise the power to change the boundaries of counties and towns and to erect new towns at any time in its discretion. It is difficult to see any reason for denying this power when its exercise would affect a senate district, and for permitting its exercise in the case of the smaller unit. There is another clause of some significance in the legislative article of the new Constitution, taken from the amendments of 1874; "but the legislature may abolish the county of Hamilton and annex the territory thereof to some other county or counties." This power could not be exercised between two apportionments without changing the lines of the 27th senate district, since after the division that district would cease to be bounded by county lines.

We are of the opinion that, under the present Constitution, the act chapter 934 of the Laws of 1895, as an act of annexation, was within the constitutional power of the legislature, although it changed, as to the twenty-second senate district, the county boundaries of the district. But such effect should be given to the act as will least disturb the general plan, and this will be accomplished by regarding the annexed territory as still a part of that district for the election of a senator. The departure from the plan that senate districts shall be bounded by county lines will be temporary. Upon a new enumeration, the counties of New York and Westchester, as they stand at that time, will be units of division in forming the new legislative districts. It will be then the duty of the legislature, under the mandatory provisions of the Constitution, to organize the senate districts out of the then existing counties, and courts in considering the constitutionality of statutes may act upon the assumption that a duty positively enjoined will be performed. This mode of reconciliation between the Constitution and the statute will not interfere with the policy, so carefully guarded in the Constitution, of preventing a change of representative districts intermediate two enumerations, for partisan purposes. It also gives full effect to the requirement of the Constitution (Art. 3, sec. 5) that boards of supervisors in constituting assembly

districts shall so arrange them that each assembly district "shall be wholly within a senate district formed under the same apportionment."

There are some embarrassments in regarding the annexed territory as part of the county of Westchester for the purpose of division of the county into assembly districts. Boards of supervisors in counties entitled to more than one member of assembly are, by section 5, art. 3 of the Constitution, to meet and "divide such counties" into assembly districts. The Annexation Act took the annexed territory out of Westchester county and made it a part of the county of New York. Its corporate relation to Westchester county was changed. The framers of the Constitution may not in using the word "counties" have had in view the case of a change of county boundaries after an apportionment and before a division into assembly districts. But, construing the word "counties" in this connection as meaning the territorial division existing when the apportionment was made, the difficulty may be overcome. So also upon the construction we give to the act of annexation, the inhabitants of the annexed territory will not be represented in the board of supervisors of Westchester county when it comes to form the assembly districts. So also their interests as residents of the city and county of New York may possibly at times be antagonistic to those of the inhabitants of Westchester county, and yet the senator and members of assembly from that county will be the common representatives of such diverse interests.

We are not unmindful of the difficulties in the case. But they attend any construction which may be given to constitutional provisions, on their face somewhat hostile, but which the court is bound if possible to reconcile. We think the construction of the act of annexation, which affirms its validity as such, but leaves the annexed territory part of the twenty-second district and of the second judicial district and department, and within the jurisdiction of the board of supervisors of Westchester county for the purpose of forming assembly districts, most nearly harmonizes the provisions of the Consti-

tution relating to senate, judicial and assembly districts, and the power possessed by the legislature to divide counties and towns.

The objection to the Annexation Act that it violates the constitutional provision establishing judicial districts and departments, is answered by the reasoning upon which we sustain the change in the county lines of the twenty-second senate district.

The words, "in every respect and to the same extent," found in the Annexation Act, read in connection with the context, are satisfied by construing them as referring to municipal burdens and municipal rights in which the annexed territory and its inhabitants were to share. The voters in the annexed territory will be entitled to vote for senator, member of assembly and for justices of the Supreme Court, the same as though the Annexation Act had not been passed. Elections in the annexed territory will of necessity be conducted under the control of the election officers of the city and county of New York, and the returns will be made to the proper authorities of Westchester county. This was the plan adopted under the Annexation Act of 1873, and for several years elections were conducted thereunder without confusion or difficulty.

Our conclusion is that the Annexation Act of 1895 is constitutional, but that it did not operate to take the annexed territory out of the jurisdiction of the board of supervisors of Westchester county in forming assembly districts pursuant to section 5, art. 3 of the Constitution, and that it was the duty of the board at its meeting, on the second Tuesday of June, 1895, to have included the annexed territory within one of the three assembly districts allotted by the Constitution to the county of Westchester. The board having failed to perform this duty, the mandamus was properly granted.

The judgment should be affirmed.

All concur.

Judgment affirmed.