(38 App. Div. 253.)

### IRWIN v. METROPOLITAN ST. RY. CO.  .

(Supreme Court, Appellate Division, First Department.   March 24, 1899.)

MUNICIPAL COURTS—TERRITORIAL JURISDICTION.

> A municipal court may have a jurisdiction co-extensive with the limits of the city, though this embrace more than one county; the restriction in Const. 1895, art. 6, § 18, that a local court shall not be one of record, and that the legislature shall not confer on any local court any equity jurisdiction, or any greater jurisdiction in any other respect than is conferred on county courts, having no reference to territorial limitations.

Appeal from appellate term.

Action by Robert C. Irwin against the Metropolitan Street-Railway Company.   From a determination of the appellate term affirming a judgment for plaintiff on a verdict after a trial in the municipal court of the city of New York (54 N. Y. Supp. 195), defendant appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

C. F. Brown, for appellant.

D. S. Decker, for respondent.

VAN BRUNT, P. J.   This action was commenced in the municipal court of the city of New York, borough of Manhattan, for the Eighth judicial district, against the defendant, a domestic corporation doing business in the borough of Manhattan, to recover damages for personal injuries.   The defendant, among other defenses, claimed that the act establishing the municipal court of the city of New York was unconstitutional.   This objection being overruled, and the case, upon its merits, having been tried by a jury, and a verdict rendered in favor of the plaintiff, and a judgment thereupon entered, from which an appeal was taken to the appellate term, and said judgment being there affirmed, by leave of said court this appeal was taken to this appellate division from said determination of the appellate term.

It is urged that, as the act creating the municipal court of the city of New York extends the jurisdiction of the court over more than one county, it is in violation of the constitution of the state of New York, authorizing the legislature to establish inferior local courts of civil and criminal jurisdiction.   The provision of the constitution referred to is section 18 of article 6 of the constitution of 1895, which is as follows:

> "Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no inferior local court hereafter created shall be a court of record.   The legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article.   Except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct."

Section 14 of said article 6 contains the provision of the constitution in respect to county courts.   It is as follows:

> "The existing county courts are continued, and the judges thereof now in office shall hold their offices until the expiration of their respective terms.   In

the county of Kings there shall be two county judges and the additional county judge shall be chosen at the next general election held after the adoption of this article. The successors of the several county judges shall be chosen by the electors of the counties for the term of six years. County courts shall have the powers and jurisdiction they now possess and also original jurisdiction in actions for the recovery of money only, where the defendants reside in the county, and in which the complaint demands judgment for a sum not exceeding two thousand dollars. The legislature may hereafter enlarge or restrict the jurisdiction of the county courts, provided, however, that their jurisdiction shall not be so extended as to authorize an action therein for the recovery of money only, in which the sum demanded exceeds two thousand dollars, or in which any person not a resident of the county is a defendant."

At this time the county courts possessed limited equity jurisdiction, and also limited jurisdiction in actions at law, where the defendant was, or, if there were two or more defendants, where all of them were, at the time of the commencement of the action, residents of the county. The provision in the above section, that "the legislature may hereafter enlarge or restrict the jurisdiction of the county courts," evidently was not understood to give the legislature power to confer unlimited jurisdiction upon county courts under any circumstances, as similar language in the constitutional amendment of 1869 had been construed by the courts of appeals only to give the legislature power to enlarge their jurisdiction as local courts, and that, when jurisdiction is spoken of, it has not respect to the residence of the plaintiff, but to the subject-matter and cause of action, and the person of the defendant. Landers v. Railroad Co., 53 N. Y. 450.

In order that we may see precisely what the limitation was which the framers of the constitution intended, by the language used in section 18 of article 6 of the constitution of 1895, to place upon the legislature, in conferring jurisdiction upon inferior local courts of civil and criminal jurisdiction which might be established by them, it may be useful to consider the history of constitutional and statutory provision in reference to courts and their jurisdiction since the reorganization of the judicial system which was brought about by the adoption of the constitution of 1846, the judiciary acts of 1847, and the Code of Procedure of 1848. By the constitution of 1846, and the acts above referred to, the distinction between courts of equity and courts of law was abolished; and various courts in the state exercised unlimited original jurisdiction in law and equity,— some co-extensive with the state, and others co-extensive with the localities wherein such courts were established. Under this constitution county courts were first established in all the counties except the county of New York, having limited jurisdiction in actions at law, and in actions and proceedings in equity. In the city of New York there existed at this time the court of common pleas for the city and county of New York, and the superior court of the city of New York, under this legislation having general jurisdiction in law and equity within the locality wherein such courts were established. In 1849 the legislature established the city court of Brooklyn, having similar jurisdiction; and in 1854 the recorder's court of the city of Buffalo was reorganized and enlarged as the superior

court of Buffalo having substantially general jurisdiction within its locality, and also certain special jurisdiction. In 1869 a new judiciary article was adopted by the people, which changed in some respects the provisions of the constitution of 1846 relating to courts. It made the court of common pleas in and for the city and county of New York, the superior court of the city of New York, the superior court of Buffalo, and the city court of Brooklyn, constitutional courts, and continued them, with the powers and jurisdiction they then severally had, with such further civil and criminal jurisdiction as might be conferred by law. The existing county courts were continued, with the powers and jurisdiction they then possessed, until altered by the legislature. The constitution provided that they should have original jurisdiction in all cases where the defendant resided in the county, and in which the damages claimed should not exceed $1,000, and that they should also have such further original jurisdiction as should from time to time be conferred upon them by the legislature. Section 19 of said judiciary article reads as follows:

"Inferior local courts of civil and criminal jurisdiction may be established by the legislature and except as herein otherwise provided all judicial officers shall be elected at such times and in such manner as the legislature may direct."

The general authority given to the legislature by this section, in harmony with the principles laid down in the case of Landers v. Railroad Co., above referred to, was in 1882 construed only to authorize the legislature to establish local courts on the organization of new cities or villages requiring the establishment of local judicial tribunals therein, or where, in an existing city or village, the existing courts were inadequate. By chapter 415 of the Laws of 1881, the legislature attempted to create what it called the "Niagara Police District," comprising territory embraced within two incorporated villages, together with the intervening territory, and also a portion of another town. The court held this act to be unconstitutional, because the court thereby created was not established within one of the recognized territorial divisions of the state, and as a part of the system of local government. The court say:

"The general authority given to the, legislature by section 19, art. 6, to establish inferior local courts, supplements the other provisions, and was doubtless intended to authorize the legislature to establish local courts on the organization of new cities or villages, requiring the establishment of local judicial tribunals therein, or where, in an existing city or village, the existing courts were inadequate. But we are of opinion that the language of this section must be construed to refer to local courts, as historically known,—that is, courts established for and within one of the recognized territorial divisions of the state, and as a part of the system of local government,—and that it cannot be so construed as to authorize the legislature to carve out from the territory of the state a district, for judicial purposes, not bounded by town or county, city or village, lines, and erect therein a local court. This construction s confirmed by what has been called the 'political tendency of the constitution.' The intention of the instrument was to define, as far as practicable, all the courts of the state, and, so far as, they are defined, they are either courts of general jurisdiction, co-extensive with the whole state, or courts of counties, towns, villages, or cities. By the section in question a flexible provision was made to meet the wants of new political communities, which from time to time should be organized according to the general plan. The constitution seems

carefully to guard the autonomy of the several divisions in all matters of local government, and to avoid, as far as practicable, any confusion or division of powers, or any obliteration of their local independence and control in all matters of local government." People v. Porter, 90 N. Y. 68.

As thus construed, this section of the constitution reads as though the provision had been that in counties, towns, villages, and cities, the legislature may establish inferior local courts of civil and criminal jurisdiction. The legislature, therefore, under these provisions of the constitution, had the power to establish inferior local courts, unrestricted as to their jurisdiction within the locality wherein they were established. Such locality, however, must correspond with one of the recognized territorial divisions of the state, namely, a county, town, village, or city. Such localities, however, were not confined to those which existed at the time of the adoption of the constitution; but the section in question was intended to be a flexible provision to meet the wants of new political communities of the kind referred to, which should from time to time be organized according to the general plan; the court distinctly holding that new counties, towns, villages, and cities might be established by the legislature, and, as a part of the local government of the new corporation, local courts might be established, whose jurisdiction must be co-extensive with the locality, as a part of whose local government the court was established,—such locality being one of the territorial divisions recognized by the constitution.

In 1894 a constitutional convention was held, which framed a constitution, subsequently adopted by the people, by which great changes were made in the judicial system of the state. It seems to have been the intention of the framers of that instrument to abolish all local courts having general jurisdiction at law and in equity within their locality, and to confine all such jurisdiction (except a limited jurisdiction conferred upon the county courts) to the supreme court. Consequently the court of common pleas for the city and county of New York, the superior court of the city of New York, the superior court of Buffalo, and the city court of Brooklyn were abolished. The judges of these courts, as well as all their jurisdiction, whether general or special, were transferred to the supreme court, which was a court having general jurisdiction at law and in equity co-extensive with the limits of the state. It seems to have been their intention to allow the legislature the same authority which they possessed under the old judiciary article of 1869, as interpreted by the decisions of the court of appeals, to establish inferior local courts of civil and criminal jurisdiction; and as the language contained in that judicial article had been interpreted, and it was well understood what powers would be conferred upon the legislature by the use of that language in the new constitution, it was therein inserted without change or amendment. In order, however, that the general scheme of the constitution, that all unlimited original jurisdiction at law and in equity should be vested only in the supreme court, might not be defeated by the establishment of inferior local courts similar to those local courts which were being abolished by the provisions of the instrument they were framing,

they added, to the words contained in the previous constitution, limitations upon the powers of the legislature to confer jurisdiction within the localities in which the courts were situated. The words transferred from the old constitution to the new contained well-understood territorial limitations. But the legislature had power to confer unlimited jurisdiction, within those territorial limits, upon local courts which they might therein establish; and for the purpose of limiting its authority the provision was added that no inferior local court thereafter created should be a court of record, and that the legislature should not confer upon any inferior local court equity jurisdiction, or any greater jurisdiction in other respects than was conferred upon county courts by or under this article. In other words, the framers of the constitution did not intend to permit local courts to grow up into courts of general jurisdiction, even within the locality wherein they were situated. The legislature was prohibited from establishing a local court of record; nor could it confer upon any local court of its creation any equity jurisdiction; and then, in order that it might not give such courts general jurisdiction in actions at law, the constitution restricted the jurisdiction which might be conferred in other respects to that which was conferred upon county courts by the instrument. It cannot be that after using language which was well understood, and had been distinctly interpreted to give the legislature the right to establish inferior local courts, as part of a new system of government, it was intended to restrict that power by reference to the territorial jurisdiction conferred upon county courts, but rather to restrict their jurisdiction as to subject-matter and persons, and not as to locality. Such a construction is not only reasonable, but harmonizes all the parts of this provision of the constitution. It is a well-established rule of constitutional construction that a statute can be declared unconstitutional, only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law; and until every reasonable mode of reconciliation of the statute with the constitution has been resorted to, and reconciliation has been found impossible, the statute will be upheld. People v. Board of Sup'rs of Westchester Co., 147 N. Y. 1, 41 N. E. 563. There might, perhaps, be some force in the argument that the framers of the constitution had in mind the territorial jurisdiction of the county courts, if county lines were immutable, and were not the subject of change at the will of the legislature. County lines have no more dignity than, and are as subject to the action of the legislature as, any of the other territorial divisions of the state, such as towns, villages, and cities. In the case last above cited, the court expressly held that the power of the legislature to erect new counties, although not conferred by any express grant, is implied in the prohibition in section 5, art. 3, relating to members of assembly, that no new county shall be hereafter erected, unless its population shall entitle it to a member. People v. Board of Sup'rs of Westchester Co., supra. In that case a new county had not been created, but a part of Westchester county had been taken and annexed to the city and county of New York. The legislature thus having the power to

consolidate counties under the constitution as framed, it is apparent that, by the restrictions to jurisdiction contained in the section under consideration, territorial limitations were not intended. At the time that the constitution in question was framed, the subject of the consolidation, under one municipal government, of the counties of New York, Kings, Richmond, part of Queens, and part of Westchester, was being agitated; and an act had been passed by the legislature requiring the submission of this proposed consolidation at the same time when the constitution then being framed should be submitted for adoption. The framers of the constitution must therefore have had in mind the possibility of the organization of this new city, and that as a part of the local government of such new corporation a local court must be established; and it would be unreasonable to suppose that they intended to prohibit the establishment of a court which had been held by the highest court of the state to be one of the functions of said local government, unless such intention was manifested by unequivocal and unmistakable language. It is possible, as we think has been shown, to give full effect to all the limitations embraced by the article in question, without nullifying the power conferred by the first paragraph of the section, as interpreted by the court of last resort. It may be that, in the act creating the municipal court, jurisdiction may have been attempted to be conferred which contravenes the constitution; but there is no infirmity in the scheme creating the court which renders the whole of the provision in respect thereto void and of no effect.

The judgment should be affirmed, with costs. All concur.