ment for divorce. See Madge v. Madge, 42 Hun, 525. The confession of adultery, when perfectly free from all taint of collusion, and when confirmed by circumstances and conduct, ranks among the best species of evidence. See Shelf. Mar. & Div. p. 411. In the case of Lyon v. Lyon, 62 Barb. 138, it was held that:

"The confessions are not alone sufficient to establish the charge of adultery. A sentence of divorce will not be given upon the sole confessions of the party. The foundation of the rule which forbids the granting of a decree of divorce on the unsupported confessions of a party is the fear of collusion and imposition on the court. When, however, the reason of the rule fails, the rule itself ceases. Hence, when the confessions are made under circumstances which entirely preclude suspicion of collusion or imposition, the confessions will be received, and a decree granted thereon, without other evidence."

In the case of Bailey v. Bailey, 41 Hun, 424, it was held that a husband may testify for, but not against, his wife in an action for divorce. Code, § 831. In the case at bar, as we have said, the wife swears that she has not seen her husband for 10 years. While there is nothing to indicate that Clarkson, to whom the defendant made his confession of adultery, was acting as the agent of plaintiff, and procured the confession in collusion with the defendant, still the testimony on this point is meager, and I think it would be proper to require Clarkson to explain more fully the circumstances under which the confession was made. The evidence of Higgins, who testified to selling the goods to defendant, and meeting a woman, other than the plaintiff, whom he supposed to be defendant's wife, is too vague and indefinite to serve as a satisfactory corroboration of defendant's confessions. I think the trial should be adjourned, and another opportunity given to the plaintiff to supply the deficiencies in the evidence as it now stands. If the written confession is properly put in evidence, and shown to be without taint of collusion, it will greatly strengthen the insufficient proofs now presented.

An order may be entered restoring the case to the calendar, and setting it down for trial on the second Wednesday of December, 1899.

---

(44 App. Div. 603.)

### DODGE MFG. CO. v. NASSAU SHOW-CASE CO.

(Supreme Court, Appellate Division, Second Department.    November 28, 1899.)

COURTS—JURISDICTION—RESIDENCE.

    Under Const. art. 6, § 18, providing that the legislature shall not confer upon inferior or local courts of its creation any greater jurisdiction than is conferred upon county courts by the constitution, and Code Civ. Proc. § 340, subd. 3, giving county courts jurisdiction of actions for money only, where defendants are residents of the county where the action is brought, a judgment rendered by the municipal court of New York City in the borough of Brooklyn against a corporation, the residence of which did not appear, is not void for lack of jurisdiction.

Appeal from municipal court, borough of Brooklyn, Second district.

Action by the Dodge Manufacturing Company against the Nassau Show-Case Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Frederick W. Mattocks, for appellant.
John R. Manley, for respondent.

PER CURIAM. The complaint alleges that the defendant is a domestic corporation organized under the laws of the state of New York. It does not show where the principal business office of the corporation is located, or where its general business is carried on. Hence the residence of the corporation, in a legal sense, cannot be determined by reference to the complaint; nor does any other part of the record before us throw any light on that subject. The defendant appeared and answered, but the attorneys subsequently entered into a stipulation "that the defendant's appearance and answer be withdrawn, and the petition of the parties be as if no appearance had been made, and no answer filed." The municipal court thereupon proceeded to render judgment in favor of the plaintiff as upon the defendant's default, and the defendant now attacks that judgment on the ground that the court was without jurisdiction, because there was nothing before it to show that the defendant resided in Kings county. This objection to the jurisdiction is based upon the decision of the learned appellate term in the First department in Rieser v. Charles F. Parker & Co., 27 Misc. Rep. 205, 57 N. Y. Supp. 745. We are unable to concur in that decision. It is true that this court has held the municipal court of the city of New York to be a new court. In re Schultes, 33 App. Div. 524, 54 N. Y. Supp. 34. But we think the appellate term has given too narrow a construction to the provision of section 18, art. 6, of the constitution, which enacts that "the legislature shall not hereafter confer upon any inferior or local court of its creation * * * any greater jurisdiction * * * than is conferred upon county courts by or under this article." Under subdivision 3 of section 340 of the Code of Civil Procedure the county court has jurisdiction of an action for the recovery of money only where all of the defendants are residents of the county in which the action is brought. It is contended that hence no local court created by the legislature subsequent to the constitution of 1895 can be given jurisdiction over defendants who do not reside in the territory for which the court is constituted. We think the intention of the constitution makers is plain. It was to prevent the creation of courts with greater powers and dignity than county courts. This is manifested by the direction that future local courts shall not be made courts of record. In Irwin v. Railway Co., 38 App. Div. 253, 57 N. Y. Supp. 21, is to be found an exhaustive review of the subject in which we have at this term of court concurred. It was held that the charter provisions granting the municipal court of the city of New York jurisdiction throughout the whole of the city, though including several counties, were constitutional and valid. Unfortunately, however, a single expression in the opinion has been laid hold of as the foundation of an argument to sustain the doctrine of the appellate term. Justice Van Brunt there wrote:

"It cannot be said that  *  *  *  it was intended to restrict that power by reference to the territorial jurisdiction conferred upon county courts, but rather to restrict their jurisdiction as to subject-matter and persons, and not as to locality."

The courts of justices of the peace throughout the state have, and have had long anterior to the constitutional amendment, jurisdiction of the person of any defendant who might be found in the county; and, even when the defendant could not be found in person, could acquire jurisdiction by attachment if property of the defendant could be seized within the county. This is the case with foreign corporations. Subdivision 2, § 2906, Code Civ. Proc.; section 2865, Id. District courts in the old city of New York and courts of justices of the peace in the old city of Brooklyn had similar jurisdictions; but, if the doctrine of the appellate term is to control, wherever new cities or villages are hereafter created, and given local courts, the system of collecting small debts in the case of nonresidents, whether corporations or individuals, which has prevailed so long and without criticism on its efficiency or its propriety, will be abrogated, and every claim, no matter how small its amount, must be either prosecuted in the supreme court, or the claimant remitted to the local court at the defendant's residence to enforce its payment. No such unreasonable intent should be imputed to the constitution makers, nor is the language such as requires this result. No one could suppose that to confer upon a new tribunal a jurisdiction which has long been exercised by justices of the peace would give it greater power or dignity than the county court.

The judgment appealed from should be affirmed, with costs.