THE BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT NO. 6 OF THE TOWN OF CORTLANDT, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, Respondent, *v.* THE BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT NO. 7 OF THE TOWN OF CORTLANDT, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, Appellant.

*Constitutional question, by whom it can be raised — a legislative grant to a corporation may be altered — a board of education cannot sue to have a statute depriving it of part of its territory declared unconstitutional — limitations on corporate power to sue — legislative power over school districts.*

A constitutional question can only be raised by one having a legal right or interest involved.

A legislative grant to a corporation of special privileges, unless forbidden by the Constitution, may be a contract, but where one of the conditions of the grant is that the Legislature may alter or revoke it, a law altering or revoking, or which has the effect of altering or revoking, the exclusive character of such privileges, cannot be regarded as one impairing the obligation of the contract, whatever may be the motive of the Legislature or however harshly such legislation may operate upon the corporation or the parties affected by it.

The board of education of a union free school district cannot maintain an action to have a statute, transferring a portion of its territory to another school district, declared unconstitutional on the ground that its inhabitants would be obliged to pay a larger tax for the purpose of liquidating the outstanding obligations of the district than they would if the statute had not been enacted, as the only persons interested in the determination of that question are the taxpayers and creditors of the plaintiff school district.

Section 1926 of the Code of Civil Procedure does not authorize the maintenance of such an action.

So far as the school district itself is concerned, it is competent for the Legislature, not only to transfer a portion of territory to another district, but to merge it into such other district or to abolish it entirely.

Section 3 of article 8 of the State Constitution, providing that "all corporations shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons," does not confer upon corporations the general power to maintain all kinds of actions, but only those relating to their corporate rights.

APPEAL by the defendant, The Board of Education of Union Free School District No. 7 of the Town of Cortlandt, County of Westchester and State of New York, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the

office of the clerk of the county of Westchester on the 25th day of January, 1902, upon the decision of the court, rendered after a trial at the Westchester Special Term, overruling a demurrer to the complaint, and also from an order bearing date the 1st day of February, 1902, and entered in said clerk's office, allowing costs to the plaintiff.

*Theodore H. Silkman,* for the appellant.

*Elbert P. James* and *Eugene B. Travis,* for the respondent.

WOODWARD, J.:

The Board of Education of Union Free School District No. 6 of the town of Cortlandt, Westchester county (hereinafter referred to as district No. 6), brings this action against the Board of Education of Union Free School District No. 7 of the town of Cortlandt, Westchester county (hereinafter referred to as district No. 7), for the purpose of having chapter 576 of the Laws of 1898 declared unconstitutional and void, and incidentally to collect from the latter district the sum of $3,000 in damages by reason of the operation of said statute.   The act in question is entitled "An act to locate and establish the boundaries of union free school district number seven in the town of Cortlandt," and it authorizes (§ 1) the school commissioner of the third commissioner district of the county of Westchester   *   *   *   to establish the boundaries of union free school district number seven in the town of Cortlandt, so as to include in such school district all that part of the village of Peekskill, situate on the south side of McGregory brook, and more fully described as follows." (Here follows detailed description, not material to the question here presented.)   It is then provided (§ 2) that "all the territory included within the boundaries as described in section one of this act shall be known as union free school district number seven in the town of Cortlandt and the lands included within said bounds, and the taxable inhabitants and the corporations residing and being therein, shall be subject *pro rata* of assessed valuation to taxation for all school purposes in said district, including the current expenses and all bonded indebtedness now resting upon the said school district as its boundaries existed prior to the passage of this act."

This act, upon its face, appears to be merely an exercise of that

legislative power vested by the Constitution in the Senate and Assembly (Art. 3, § 1), and the power to create municipal corporations and to alter and abolish the same being especially intrusted to the Legislature by the provisions of section 1 of article 8 of the State Constitution, it would seem to follow, in the absence of other provisions or arrangements in the Constitution in conflict therewith, that the matter rested in the discretion of the Legislature, and was not open to review in this court. (*People ex rel. Henderson* v. *Supervisors*, 147 N. Y. 1, 15.)

It seems, however, that the Legislature in reforming the boundaries of district No. 7 has taken a portion of the territory which formerly belonged to district No. 6, and it is alleged on the part of the latter district that there were outstanding certain obligations of the said district No. 6 which were based upon the district as it was before the enactment of this legislation, and that the act in question violated the obligation of the contract by taking from district No. 6 a portion of its territory and annexing the same to district No. 7, thus making the taxable share of the inhabitants of district No. 6 larger than would otherwise be necessary to pay such outstanding obligations. This ingenious theory, put forward by district No. 6, has received the sanction of the learned court at Special Term, and it becomes necessary to consider the question.

It should be remembered that the plaintiff in this action is not a taxpayer or a creditor of district No. 6 ; it is the district itself, acting through its board of education, and it undertakes to question the power of the Legislature of this State to enact a law which changes the boundaries of a municipal corporation simply because it operates to take territory from an existing municipal corporation. The act of the Legislature is presumptively valid, because it is an act of legislation within the ordinary scope of legislative power, and for the further reason that the presumption of constitutionality attaches to every statute enacted by the Legislature. (*People ex rel. Henderson* v. *Supervisors, supra.*)

These presumptions are materially strengthened in the matter now before us by the fact that it is provided by the Constitution that " corporations may be formed under general laws, but shall not be created by special act except for municipal purposes and in cases where, in the judgment of the Legislature, the objects of the corpo-

ration cannot be attained under general laws," and that "all general laws and special acts passed pursuant to this section may be altered from time to time or repealed." (State Const. art. 8, § 1.) It will be seen that municipal corporations are especially excepted from the directory limitations of this provision of the Constitution, and there can be no doubt that a school district is a municipal corporation coming within this exception. (Gen. Corp. Law, Laws of 1892, chap. 687, § 3.)

In this State the general rule of corporate limitations has been enacted into statute law, and it is now provided that "no corporation shall possess or exercise any corporate powers not given by law or not necessary to the exercise of the powers so given" (Gen. Corp. Law, § 10, as amd. by Laws of 1895, chap. 672), and a careful examination of the statutes does not disclose to us any power on the part of school districts to act as the guardians of the taxpayers or creditors of their respective districts. Unless it can be shown that district No. 6 has been given some such power, we are unable to discover any justification for its appearance as a plaintiff in the present action, for the rule is fundamental that a constitutional question can only be raised by one who has a legal right or interest involved. (*Waterloo Woolen Mfg. Co.* v. *Shanahan*, 128 N. Y. 345, 362; *Town of Pierrepont* v. *Loveless*, 72 id. 211, 216.)

It is not pretended that district No. 7 has taken any of the property vested in district No. 6 by virtue of the Consolidated School Law (Laws of 1894, chap. 556, as amd.); the theory of the action appears to be that district No. 6, by reason of the bonds which had been issued pursuant a vote of the inhabitants of the district as it was, had in some manner assumed a contractual relation with the State which could not be changed by legislation, and it is urged that the act of 1898 is null and void because it violates the obligation of a contract. A legislative grant to a corporation of special privileges, if not forbidden by the Constitution, may be a contract; but where one of the conditions of the grant is that the Legislature may alter or revoke it, a law altering or revoking, or which has the effect of altering or revoking the exclusive character of such privileges cannot be regarded as one impairing the obligation of the contract, whatever may be the motive of the Legislature or however harshly such legislation may operate in the

particular case upon the corporation or parties affected by it.  The corporation, by accepting the grant subject to the legislative power so reserved by the Constitution, must be held to have assented to such reservation. (*Hamilton Gas Light Co.* v. *Hamilton City*, 146 U. S. 258, 270.) Such an act may be amended, that is, it may be changed by additions to its terms or by qualifications of the same. It may be altered by the same power and it may be repealed. What is it that may be repealed ?  It is the act of incorporation. It is this organic law on which the corporate existence of the school district depends which may be repealed, so that it shall cease to be a law, or the Legislature may adopt the milder course of amending the law in matters which need amendment, or altering it when it needs substantial change.  All this may be done at the pleasure of the Legislature.  That body need give no reason for its action in the matter.  The validity of such action does not depend on the necessity for it, or on the soundness of the reasons which prompted it.  (*Greenwood* v. *Freight Co.*, 105 U. S. 13, 17.)  The Legislature, in the exercise of its powers, might have merged district No. 6 in district No. 7, or it might have abolished the district entirely, saving the rights of creditors, and there would be no power on the part of the board of education of district No. 6 to interfere, because the Constitution has specially reserved to the Legislature the power to alter or abolish the corporations of its creation.  These union free school districts are organized for special and limited purposes, and, while the Constitution provides in section 3 of article 8 that "all corporations shall have the right to sue and shall be subject to be sued in all courts in like cases as natural persons," it is not to be understood that they shall have the general power to sue in all kinds of actions, but only in those which relate to their corporate rights, just as the citizen is confined to actions in which he has a real interest.  (Code Civ. Proc. § 449.)

District No. 6 has no corporate right as to the limits of its territory ; its powers are confined to the maintenance of school privileges within the territory assigned to it by the legislative power of the State, and it can have no standing in the courts of this State except for the purpose of protecting and maintaining its corporate powers and in carrying out the objects for which it was created.

A contract is described by Mr. Chief Justice MARSHALL as "an

agreement in which a party undertakes to do, or not to do, a particular thing," and he adds : " The law binds him to perform his undertaking, and this is, of course, the obligation of his contract." (*Sturges* v. *Crowninshield*, 4 Wheat. 197.)   District No. 6 and the State Legislature never entered into any agreement which could be called a contract in reference to the territory which it should embrace.   A certain territory and its inhabitants was created into a body corporate for the purpose of affording school facilities, and if the Legislature subsequently reached the conclusion that the purposes of the corporation could be better performed by reducing the district, or if it was, in the judgment of the Legislature, wise to take a portion of the territory of this district and add it to another, it violated no contract of the State with the municipality.   It still retained all of its corporate powers ; it was still vested with the powers necessary to maintain the schools of its district, and it still retained title to all of the property which belonged to the district in its corporate capacity, so that no possible interest of the corporation is involved in this litigation.   By the obligation of a contract is meant the means which, at the time of its creation, the law affords for its enforcement.   The usual mode by which municipal bodies obtain the funds to meet their pecuniary engagements is taxation.   Accordingly, when a contract is made upon the faith that taxes will be levied, legislation repealing or modifying the taxing power of the corporation so as to deprive the holder of the contract of all adequate and efficacious remedy, is within the constitutional inhibition (*Nelson* v. *St. Martin's Parish*, 111 U. S. 716, 721), but the holders of the contracts of district No. 6 are not here complaining; no one suggests that the district as it now stands is not abundantly able to meet all of its obligations, but it is urged by the respondent that the taxpayers of district No. 6, by reason of this change in district boundaries, will be obliged to pay more than they otherwise would of the indebtedness of the district, but how this affects the corporate rights of district No. 6, or what interest it has in the individual affairs of the people who make up the corporation, does not appear.   We are forced to conclude, therefore, that district No. 6 is not a real party in interest, and that it has no power to question the constitutionality of the act of the Legislature here under consideration.

The suggestion of the respondent that district No. 6 has some standing under the provisions of section 1926 of the Code of Civil Procedure is without merit; that section merely gives certain designated officers, among them trustees of school districts, authority to maintain certain actions, and section 1928 provides : " The last two sections do not apply to a case where it is specially prescribed by law that an action may be maintained by or against the body represented by an officer designated in those sections; but, in such a case, the prosecution or defense of the action, as the case may be, must be conducted by the persons then in office who represent that body." There is no authority in section 1926 for an action by a board of education to protect the rights of taxpayers or creditors of a particular territory included in a municipal corporation.

Equally untenable is the suggestion that district No. 6 is denied any of the rights or privileges guaranteed by the 1st section of article 1 of the State Constitution. That majestic declaration in behalf of individual rights provides that " No member of this State shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof unless by the law of the land or the judgment of his peers."

We have already shown that the right or privilege of maintaining an action in the courts of this State depend upon having a real interest in the controversy, and that the plaintiff in this action had no such interest. It is difficult, therefore, to understand what right of the plaintiff will be denied by sustaining the demurrer of the defendant to the complaint. It has no real interest in any question proposed to be litigated; it has all of its corporate rights intact, though it was within the power of the Legislature to abridge or abolish them utterly, and it appears in this litigation as a mere volunteer to raise questions which are not open to any person or corporation other than a taxpayer or a creditor of the district, if at all.

The interlocutory judgment appealed from should be reversed, and the demurrer of the defendant sustained.

All concurred.

Interlocutory judgment reversed and demurrer sustained, with costs.