BLACK RIVER REGULATING DISTRICT et al., Appellants, *v.* ADIRONDACK LEAGUE CLUB, Respondent.

Fourth Department, May 27, 1953.

162

*Daniel Scanlon* and *Russell Wright* for appellants.

*Charles H. Tuttle, Warnick J. Kernan, John R. Brook* and *Sanford D. Stockton, Jr.,* for respondent.

*Milo R. Kniffen* for Adirondack Moose River Committee, Inc., and others, *amici curiæ.*

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *Edward L. Ryan* of counsel), appearing under section 71 of the Executive Law.

McCurn, J. This is an appeal from an order at Special Term dismissing the complaint in an action for declaratory judgment and from a summary judgment entered thereon in favor of the defendant.

The New York State Constitution prior to 1913 provided that the forest preserve shall forever be kept as wild forest lands and shall not be leased, sold, or exchanged or taken by any corporation, public or private, nor any timber thereon sold, removed or destroyed. A 1913 amendment to the Constitution provided that the Legislature might by general laws provide for the use of not exceeding 3% of such lands for the construction and maintenance of reservoirs for municipal water supply, for the canals of the State, and to regulate the flow of streams. Such amendment further provided that such reservoirs should be constructed and controlled by the State, and the expenses thereof apportioned on the public and private property and municipalities benefited, to the extent of the benefit received. Following such 1913 amendment the Legislature enacted a chapter of the Conservation Law entitled: " River Regulation By Storage Reservoirs," that act now being article VII of the Conservation Law. It provided for the creation of River Regulating Districts in part 2 thereof and in part 5 established the procedure for construction of reservoirs.

The plaintiff Regulating District was created in 1919 as a public corporation pursuant to the Conservation Law. By April of 1920, it had prepared a plan for the regulation of the Black River and its tributaries which plan had been approved by the

Conservation Commission. The plan included construction of the Stillwater Reservoir on Beaver River and the Panther Mountain Reservoir on Moose River. The Stillwater Reservoir has been completed and is in operation. After the preliminary plans and hearings as required by law the plaintiff board on November 23, 1948, made its final order to construct the Panther Mountain Reservoir pursuant to its plan approved by the Conservation Commission. The plan for the construction of the Panther Mountain Reservoir requires the use of approximately 1,500 acres of the Adirondack Forest Preserve owned by the State and about 3,500 acres of land belonging to the Adirondack League Club, the defendant herein.

Section 454 of the Conservation Law provides that any party affected by the final determination of the board may review such final determination by certiorari. The League Club, and certain other organizations whose interests were alleged to have been affected by the order, petitioned for such a review. The proceeding was transferred to this court and determination of the board confirmed (see *Matter of Adirondack League Club* v. *Black Riv. Regulating Dist.*, 275 App. Div. 618). The League Club appealed to the Court of Appeals. While the appeal was pending and prior to the argument thereof, the Legislature enacted, and on April 20, 1950, the Governor signed, the so-called Stokes Act (L. 1950, ch. 803) amending section 445 of the Conservation Law by inserting therein the following: " No reservoirs for the regulation of the flow of streams or for any other purpose except for municipal water supply shall be hereafter constructed in Hamilton or Herkimer counties on the south branch of the Moose River by any river regulating board." The appeal came on to be heard in the Court of Appeals on May 26, 1950. That court decided that the action of the Legislature in passing the so-called Stokes Act effectively and completely disposed of the board's plan, and that the questions raised upon the appeal had thereby become moot (*Matter of Adirondack League Club* v. *Black Riv. Regulating Dist.*, 301 N. Y. 219). It directed that " The orders should be reversed, without costs and the proceedings remitted to Special Term, with directions to dismiss the petitions solely upon the ground that the issues are moot." A final order making the order and judgment of the Court of Appeals the order and judgment of the Supreme Court and dismissing the proceedings was thereafter made at Special Term. The plaintiffs thereafter brought this action for a declaratory judgment.

The complaint alleges among other things the preparation and approval of the plan and the final order thereon; that the plaintiff board made extensive investigations, surveys, maps and studies for the construction of the Panther Mountain Reservoir from 1920 down to 1950; that prior to the date of the enactment of the Stokes Act it had expended approximately a quarter of a million dollars for such investigations, surveys and public hearings as necessary preliminaries for the construction of Panther Mountain Reservoir; that the board had so far proceeded with the construction of the reservoir as to entitle it to complete such work for the benefit of the district and those within such district subject to assessment for the works of the district. It is further alleged:

" 15. That there are now outstanding the duly issued obligations and certificates of indebtedness of plaintiff Board in an amount of over Two Hundred Thousand Dollars which are due and payable on September 1, 1951, and which represent debts duly incurred by the plaintiff District for preliminary work done in connection with construction of Panther Mountain Reservoir prior to April 20, 1950.

" 16. That the debt referred to in the preceding paragraph was and is intended to be paid by plaintiff Board out of the proceeds of the sale of bonds of the District to be issued for construction of Panther Mountain Reservoir in accordance with the Official Plan of the Board, and that such debt was duly incurred on this basis prior to April 20, 1950. * * *

" 20. The defendant asserts that this amendment bars the construction of Panther Mountain Reservoir.

" 21. That plaintiffs assert that such amendment is not effective to prevent the completion of Panther Mountain Reservoir, and that such amendment would be and is unconstitutional and void under the Constitutions of the United States and of the State of New York, if construed as preventing the completion of Panther Mountain Reservoir." The complaint further alleges that plaintiff board is commencing a condemnation proceeding against the League Club to acquire title for the State of New York of the lands of the defendant required for the construction and maintenance of the reservoir. The complaint demands judgment determining and declaring the rights of the parties and particularly determining and declaring,

" 1. That the Board of Black River Regulating District is entitled to maintain condemnation proceedings against Adirondack League Club to acquire lands owned by it and necessary for construction of Panther Mountain Reservoir.

" 2. That Chapter 803 of the Laws of 1950 is invalid and unconstitutional so far as it may seem to restrict or prevent the Board of Black River Regulating District from proceeding with and completing the work of construction of Panther Mountain Reservoir."

There is precedent for an action seeking a declaratory judgment to settle disputed claims in connection with a condemnation proceeding (see *Syracuse Grade Crossing Comm.* v. *Delaware L. & W. R. R. Co.*, 197 Misc. 192, mod. on other grounds 263 App. Div. 930, affd. 290 N. Y. 632, and *Harrison* v. *New York Central R. R. Co.*, 255 App. Div. 183, affd. 281 N. Y. 653).

The answer denies all of the material allegations of the complaint. For a first and separate defense it alleges in substance that the plaintiffs are without authority to construct and effectively barred from proceeding with the construction of the proposed dam by reason of the enactment of the Stokes Act. For a second affirmative defense it alleges in substance that as a result of the decision of the Court of Appeals the final order and plan of the plaintiffs are no longer in existence and that the plaintiffs have no standing to bring this action. For a third affirmative defense the defendant alleges that the plaintiff Regulating District is a public corporation and has no standing in law to question the constitutional power of the Legislature to adopt the Stokes Act.

The plaintiffs served a supplement to their complaint setting forth that the plaintiffs had issued and had outstanding certificates of indebtedness in the principal sum of $203,000 issued pursuant to law to obtain funds for necessary preliminary expenses for the construction of the reservoir in question; that said certificates had been presented for payment and payment refused; that the plaintiffs have insufficient moneys in their general fund to permit payment of such certificates and have no other means of paying the same except through completion of the Panther Mountain Reservoir, and the issuance and sale of bonds to cover the cost, including the preliminary expenses thereof. They further allege that the so-called Stokes Act is void as impairing the obligation of contract under such certificates and depriving the plaintiffs of their ability to fulfill their contract obligations under such certificates of indebtedness.

The defendant's answer to the supplement to the complaint is in effect a general denial and a statement to the effect that the allegations contained therein are irrelevant.

The defendant brought on a motion for an order granting judgment on the pleadings in favor of the defendant under rule

112 of the Rules of Civil Practice on the ground that the plaintiffs are barred from the relief demanded in the complaint by the Stokes Act and the decision of the Court of Appeals; and upon the further ground that the plaintiffs are without power or authority to question the constitutional power of the Legislature; and upon the further ground that the Legislature and the Court of Appeals have effectively and completely disposed of the plaintiffs' plan. The notice of motion also states that the defendant will at the same time and place move under rule 113 of the Rules of Civil Practice for an order dismissing the complaint and for summary judgment. In support of the motion under rule 113 an affidavit was filed incorporating the remittitur of the Court of Appeals in the motion papers. There were also heard at the same time motions on behalf of Miss Madeleine Bagley, holder of a certificate of indebtedness, and the City of Watertown to intervene as plaintiffs in the action. The Special Term granted the motion for summary judgment on the theory that as stated in the Court of Appeals decision " since no construction had actually been commenced, the action on the part of the Legislature effectively and completely disposed of the Board's plan." The Special Term concluded that if there was no longer any plan in existence, and since the Court of Appeals had stated that there was none, then there was no basis upon which the plaintiffs could proceed to condemn the defendant's lands. Having reached that conclusion the court found it unnecessary to pass upon the other grounds urged by the defendant. The motions by the City of Watertown and by Miss Bagley to be allowed to intervene were dismissed as academic, and they have not appealed.

While the judgment of the Court of Appeals directed only that the judgment of the Appellate Division be reversed and the certiorari proceeding dismissed, and technically, at least, left standing the order of the board, nevertheless it apparently rendered the order inoperative and it was, as the Special Term has stated, annulled or done away with by implication of law. The Court of Appeals did not pass upon the constitutionality of the Stokes Act. If that act should now be declared unconstitutional or otherwise invalid, such invalidity would date from the time of its enactment and there would be no longer any basis on which to rest the decision of the Court of Appeals. Since it was the Stokes Act which destroyed plaintiffs' order the fact that they now have no order should not also destroy their right to test the validity of the act that destroyed the order. The opinion at Special Term indicates that the decision there was

reached, in part at least, for the reason that if the board's order is still in existence, or if it can be revived by invalidating the Stokes Act, then the defendant would lose its right to review the order by certiorari pursuant to section 454 of the Conservation Law. We do not believe that such a result would follow. If it should be declared that the Stokes Act is unconstitutional, we see no reason why defendant would be deprived of its right to complete its certiorari under section 454. In such a situation the issues which were rendered moot by passage of the Stokes Act would be no longer moot. The defendant could, as we view it, make application to the Court of Appeals for a reargument on the merits of the appeal taken from the confirmation by this court of the determination.

We turn now to the defendant's contention that the plaintiff Regulating District as a public corporation is an agency of the State created to perform State functions and is without power to question the validity of the acts of the Legislature. There is an abundance of authority that such is the general rule. We have already held that the plaintiff is a State agency; that the members of the board of the district are State officers, and that their acts are acts of the State (*Matter of Adirondack League* v. *Black Riv. Regulating District,* 275 App. Div. 618, 626, *supra*). (See, also, *Breen* v. *Mortgage Comm.,* 285 N. Y. 425, 430, and *Gaynor* v. *Marohn,* 268 N. Y. 417, 425.) Most of the cases cited in the briefs upon this point involve municipal corporations, but the well-established rule that the power of the Legislature is supreme and not subject to being questioned by State agencies must apply to public corporations, like the plaintiff, as well as to municipalities. In fact the term " public corporation " as defined by section 2 of the General Corporation Law includes both municipal corporations and district corporations. It is generally held that " Being but creatures of the State, municipal corporations have no standing to invoke the contract clause or the provisions of the Fourteenth Amendment to the Constitution in opposition to the will of their creator " (*Coleman* v. *Miller,* 307 U. S. 433, 441; *Trenton* v. *New Jersey,* 262 U. S. 182; see, also, *County of Albany* v. *Hooker,* 204 N. Y. 1).

The status of the plaintiffs here, however, and their ability to test the validity of an act of the Legislature should not be determined entirely by the general rules mentioned in the decisions cited. Here, according to the complaint, acting under statutory authority plaintiffs have proceeded to perfect the

plan and make a final order and in so doing have incurred an indebtedness represented by over two hundred thousand dollars worth of certificates of indebtedness. According to the complaint the plaintiffs will be unable to meet these contract obligations with the certificate holders except from the proceeds of a bond issue and bonds may not be issued if the project is halted at this juncture. Thus plaintiffs, acting under statute, have incurred independent obligations and now allege that the action of the Legislature has rendered them helpless to meet their contractual obligations.

Legislation revoking the taxing powers of a municipality or State agency may be invalid as impairing the obligation of contract in some situations. " It is well settled that a State may disable itself by contract from exercising its taxing power in particular cases. It is equally clear that where a State has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. The State and the corporation, in such cases, are equally bound. The power given thus becomes a trust which the donor cannot annul, and which the donee is bound to execute; and neither the State nor the corporation can any more impair the obligation of contract in this way than in any other " (*Von Hoffman* v. *City of Quincy,* 4 Wall. [71 U. S.] 535, 554–555).

ALLEN, J., writing in *People* v. *Ingersoll* (58 N. Y. 1, 33) took occasion to discuss this question as regards an issue of county bonds as follows: " If valid, they are the obligations of the county of New York, and the debt a county charge. The State is under no obligation to pay the bonds or to provide for their payment, except so far as a sovereign State is bound to act in good faith toward those who have acted and parted with their money on the faith of its laws and policy. The State cannot, in good morals, do anything to impair or diminish the ability of the county to pay the bonds at maturity. The only security the debtor has is the credit of the county, and the grant of power to the county with direction in the act to levy taxes for the payment of the debt. To this extent, the State may, perhaps, be regarded as contracting with those who have taken the bonds, and to have agreed that this grant of power shall not be revoked; but this does not create an obligation to pay the bonds. It only brings the transaction within the provision of the Constitution of the United States prohibiting States from passing any bill

' impairing the obligations of contracts ' (Constitution of the United States, art. 1, § 10), and makes the grant of power irrevocable.'' (See, also, *Nelson* v. *·St. Martin's Parish,* 111 U. S. 716, 721; *Trustees of the Wabash & Erie Canal Co.* v. *Beers,* 2 Black [67 U. S.] 448; *Seibert* v. *Lewis,* 122 U. S. 284; *Curran* v. *State of Arkansas,* 15 How. [56 U. S.] 304, and *Board of Education* v. *Board of Education,* 76 App. Div. 355, 360, affd. 179 N. Y. 556.)

The complaint alleges in effect that the plaintiffs have no way of meeting their contractual obligations under the certificates of indebtedness except by issuance of bonds which in turn would be retired from the proceeds of taxes levied on the properties benefited from the project.

While the plaintiff Regulating District constitutes a State agency for carrying out sovereign powers of the State, still it would seem to act in its own corporate capacity as a principal and not as an agent of the State in the matter of issuing of certificates of indebtedness; it does not appear that the State has pledged its credit for the payment of such indebtedness (see discussion *People* v. *Ingersoll,* 58 N. Y. 1, 30, *supra*). It follows that, since the Stokes Act has effectively cancelled the power of the plaintiffs to issue bonds and levy taxes on the property which would have been improved by this particular project, and since the plaintiffs are and will remain liable on the certificates of indebtedness, the plaintiffs have an independent interest separate and apart from their status as agents of the State to test the validity of the Stokes Act. The removal of the plaintiffs' power to issue bonds and levy taxes with which to retire these certificates of indebtedness gives to the plaintiffs such an independent interest as to entitle them to test the validity of the act of the Legislature. Therein lies the distinction between this case and *County of Albany* v. *Hooker* (204 N. Y. 1, *supra*). Even the State itself may in a proper case assert the unconstitutionality of the acts of its Legislature (*First Constr. Co.* v. *State of N. Y.,* 221 N. Y. 295, 310).

The State, however, is not a party and because of its immunity may not be made a party. The controversy set forth in the complaint is between the plaintiffs and the defendant League Club. The plaintiffs allege that they are commencing a proceeding in condemnation to acquire certain lands of the defendant as are required for the construction and maintenance of the proposed reservoir. The defendant League Club asserts that the Stokes Act has intervened to revoke plaintiffs' power

to construct the reservoir and that consequently plaintiffs are now without power to condemn the League Club's property.

The defendant League Club takes the position that the State is an indispensable party, and since it cannot be made a party because of its immunity, the court lacks jurisdiction of the subject matter of the controversy, relying largely upon what was said in the opinion in *Niagara Falls Power Co.* v. *White* (292 N. Y. 472). In that case the controversy arose out of conflicting claims between the plaintiff and the State as to which owned certain water rights in the Niagara River. Obviously that question could not be settled in the absence of one of the conflicting claimants. The controversy here is of an entirely different nature. The controversy here involves the right of the plaintiffs to condemn some 3,500 acres of land belonging to the defendant League Club. The State has no interest at all in such lands. The State's interest extends only to the 1,500 acres of State land upon which it is proposed to build the dam, and in that land the League Club has no interest. The interest of the defendant in preventing condemnation of its land and the interest of the State in forbidding the erection of the dam upon its lands involve separate rights and interests in separate properties, and are in no way joint interests. The fact that both are relying upon the validity of the Stokes Act in asserting their respective claims does not change that situation. It has never been necessary in order to test the validity of a statute to join as parties all those who have, or may have, separate interests in establishing the validity or the invalidity of such a statute.

Whether or not the court will take jurisdiction in an action for declaratory judgment is a matter for the court's discretion (Rules Civ. Prac., rule 212). Such discretion so far as parties are concerned is subject to sections 192 and 193 of the Civil Practice Act (see Rules Civ. Prac., rule 210). Section 193 of the Civil Practice Act provides in part: "1. A person whose absence will prevent an effective determination of the controversy or whose interests are not severable and would be inequitably affected by a judgment rendered between the parties before the court is an indispensable party. A person who is not an indispensable party, but who ought to be a party if complete relief is to be accorded between those already parties is a conditionally necessary party.

"2. When it appears that an indispensable party has not been joined, the court shall order such party brought in. * * *

When it appears that a conditionally necessary party has not been joined, the court shall order such party to be brought in if he is subject to the jurisdiction of the court and can be brought in without undue delay. The court in its discretion may proceed in the action without a conditionally necessary party if his addition would cause undue delay or if jurisdiction can be acquired over him only by his consent or voluntary appearance * * *." We conclude that the State is a conditionally necessary party and not an indispensable party within the purview of section 193 of the Civil Practice Act.

It is readily apparent that if the plaintiffs are precluded from proceeding in this action because of the absence of the State as a party, they may be left without recourse to the courts to test the validity of the statute in question. Such a result should be avoided if possible. If we are correct in our view that the State is only a conditionally necessary party, then the court may and in the exercise of its discretion should take jurisdiction of the action notwithstanding the absence of the State (see Twelfth Annual Report of N. Y. Judicial Council, 1946, p. 173 *et seq.*; *Bourdieu* v. *Pacific Oil Co.*, 299 U. S. 65, 70).

In the circumstances here, we are unable to see how any prejudice may result to the interests of the State. The pleadings before us indicate quite clearly that the facts and circumstances pertinent to a construction as to the validity of the statute are all a matter of record. There is no indication in the brief of the Attorney-General that the State will make any other or different claim as to the facts. The declaration sought here presents a question of law. While it is true that any judgment rendered will not be *res judicata* as to the State and theoretically, at least, there will be the possibility of further litigation to determine the State's rights, such a prospect appears unlikely and would in any event be less undesirable than to leave the plaintiffs without a remedy. The Attorney-General is already present in the action pursuant to section 71 of the Executive Law. He appeared upon the oral argument of this case and filed an excellent brief presenting in detail every possible argument in favor of the interests of the State. We are unable to see where any prejudice may result by reason of the absence of the State as a party. We conclude that the court should take jurisdiction of the action notwithstanding the absence of the State.

We have also considered the status of the owners of the certificates of indebtedness and have reached the conclusion

that they also are conditionally necessary parties, and that such of them as are within the jurisdiction of the court should also be brought in as parties to the action.

The judgment and order appealed from should be reversed, with costs and the motion should be denied, with $10 costs.

All concur. Present — TAYLOR, P. J., McCURN, VAUGHAN, PIPER and WHEELER, JJ.

Judgment and order reversed on the law and facts, with costs, motion denied, with $10 costs, and ordered that such of the certificate holders as are within the jurisdiction of the court be brought in as parties, pursuant to section 193 of the Civil Practice Act. [See *post*, p. 829.]