Hugh S. Coyhe, J.
This is a motion to dismiss an action for declaratory judgment. The plaintiff is a Union Free School Board in one of two districts that were merged a year ago to form a new Central School District. The new Central Board and its members are the defendants who move here for dismissal.
The complaint alleges that members of the "new board are acting beyond their authority when they act as a board. Plaintiff asks that the new board be declared “ not in existence ” and without “ power to act officially until at least August 1st, 1968 ”. The plaintiff also asserts that it is the sole board in power until July 1,1968, in the area of Union Free School District No. 7.
So far as can be gathered in the complaint and the papers before the court on this motion, the only alleged interference by the new Central Board results from its activities preparing for the school year which commences July 1,1968, conducting a bond referendum, and from the publicity which has been given to these activities. The motion papers relate that the Union Free Board has conducted negotiations with employees in the Union Free School system for the school year commencing July 1,1968. At the same time the new Central Board has conducted negotiations for the entire system (which includes the bargaining unit covering both of the old Union Free School Districts). This suit appears to have followed the response by the counsel of the Commissioner of Education to an inquiry by the Central Board which was directed to him on the subject of negotiating employee contracts for the coming school year. The attorney for the Commissioner of Education held that any action by the Union Free School Board “ which purports to carry beyond the end of the current school year * * * is ultra vires and void.”
The dispute arising over this merger is not new to the courts of this State. This appears to be the third, or possibly the fourth, case to reach the courts since the time of the Commissioner’s order laying out the district, and the papers indicate additional matters brought or pending before the Commissioner of Education. Apparently of major importance in the current situation is the fact that Union Free School District No. 7 had “no facilities of its own for senior high school students”. (Matter of Union Free School Dist. No. 7 v. Allen, 29 A D 2d 608 [3d Dept., 1967], mot. for lv. to app. den. 21 N Y 2d 644.) Obviously the dispute cannot be indefinitely the subject of litigation. Whatever the origins of the original problem, it now appears that the old school district is about to pass out of existence, and a new Central Board must assume additional *68 burdens placed upon it by law within a short time. It must provide for all the students in the area.
Most of the objections, if not all, raised by the Union Free complaint are matters of fact concerning which there is little question. The main facts are not in dispute. On July 27, 1967 the Commissioner, by order, laid out the new Central School District. The district was organized by an election which took place on August 5, 1967 and the board members were elected at a school meeting held on September 7, 1967. Under article 37 of the Education Law, the new Central School District came into existence in June, 1967, i.e., “ the instant the Commissioner issued an order it was organized when the voters approved it. (Finley v. Spaulding, 274 App. Div. 522 [3d Dept., 1948].) When the school meeting elected the Central Board last September, it became an entity at once. This is implicit in the decision in the Appellate Division, Third Department (commenced by the plaintiff here as a petitioner) where last September the court rendered an opinion denying a stay of the board election, but ordered the new board to take no “ official action pending the hearing and submission ” of the case. The same court, at the request of the new Central Board, modified its earlier order last October “so as to permit officers or board to take whatever action may be necessary in regard to the acquisition of real property for school district purposes ”. It seems to follow from these opinions that the court there assumed that the new Central Board was, except for the court’s order, authorized to exercise its statutory powers. In December the Third Department rendered its opinion dismissing the article 78 petition (Matter of Union Free School Dist. No. 7 v. Allen (29 A D 2d 608, supra) terminating any remaining stay of action by the new Central Board.
The question of what the new Central Board’s powers have been, since it came into existence, is answered for the most part by sections 1804 and 1805 of the Education Law, and to some extent by section 24.00 of the Local Finance Law. Section 1804 (subd. 5, pars, a and b) allowed the new Central School Board to raise taxes for the existing obligations for the Union Free School Boards. Paragraph a of subdivision 6 specifies that the title to all property of the Union Free School Boards passed to the new Central District at the time of its “ organization ”, i.e., in August, 1967. Indeed, it seems quite plain from a reading of paragraph a of subdivision 6 of section 1804 that the Union Free Board has little function after June 30 of the present year, since the balance of funds on hand as of July 1 are to be turned *69 over to the new Central School District. For this purpose the old Union Free School Board is permitted under section 1805 to hold over in office a month beyond its normal term. The general language of section 1805 regarding the “ conducting and maintaining school ” etc., must be read in the light of the transition period set forth both in sections 1804 and 1805. The Union Free District presently is conducting the Union Free Schools and will through the month of June, following which it will have a month to wind up accounts. Since the “ organization ” of the new school district took place on August 5, 1967 the only obligations the Union Free Board has authority to discharge are those which existed on August 5, 1967. Obviously the old Union Free Board no longer has the authority or obligation to dispose of funds after June 30 of this year (except for outstanding bills and transfer to the Central Board), to commit school personnel, or to assign or encumber any of the school property to which it no longer has title. The court concurs in the conclusion of the Counsel for the Commissioner of Education that any attempt by the Union Free Board to provide for the schools after June 30, 1967, is “ ultra vires and void ”.
The Local Finance Law explicitly covers this situation insofar as the financial duties and obligations of the new public corporations are concerned. Section 24.00 (subd. d, par. 1) refers to newly created school district corporations, and empowers them to raise money by tax anticipation notes prior to the first levy of taxes. Under section 1804 of the Education Law, with reference to the Local Finance Law, the new district can levy taxes in the present year for the coming school year. Hence, it seems that the purpose of the Local Finance Law is to empower the new body to defray its expenses following its coming into, existence and before it can raise such funds by taxes.
It is the opinion of the court that the new Central Board has acted within its statutory powers preparing for the new school year, in negotiating wage contracts for the new school year, in preparing to and raising funds by a bond referendum and in incurring obligations. The corollary of this is that the old Union Free Boards are not the exclusive authorities in the area, but are termed “ existing districts ” (§ 1804) with limited authority until June 30 next, and with a mere accounting role in the month that follows. On the merits the complaint in this matter has no substance and should be dismissed. It fails to state a cause of action. (Newburger v. Lubell, 257 N. Y. 383, 386 [1931]); Goodman & Co. v. New York Tel. Co., 309 N. Y. 258 [1955].)
*70 The plaintiff asserts, however, that there may be another defect in the formation of the new Central School Board which prevents exercise of its powers, suggesting that either the election of August 5, 1967, was invalid, or that there are constitutional defects. The plaintiff refers to its pending appeal from a decision of Mr. Justice Cooke, dated December 8, 1967. This decision dismissed plaintiff’s claim that the organization election of August 5, 1967, was invalid. Apparently, the plaintiff concedes these facts, but argues in its answering papers that the old Union Free District “ shall continue to exist unless it is determined that the August 5th, 1967 vote was legal”. The difficulty with this argument is that the Supreme Court of this State has already done just that. The matter has been decided adversely to the plaintiff. The pendency of an appeal does not alter the present status. Had there been no opinion from the Supreme Court, the mere pendency of a suit would not per se alter the status of the new Central Board. As of the writing of this opinion, the various opinions in the article 78 petition dismissed last December by the Appellate Division, Third Department, and the decision by Mr. Justice Cooke in the declaratory judgment action in Albany, all established the legality of the new Central Board as against the plaintiff Union Free Board. The plaintiff here was the complainant in each of these earlier suits. Under the circumstances, it would appear that those cases do constitute a collateral estoppel against the plaintiff. (Hinchey v. Sellers, 7 N Y 2d 287, 294 [1959]; Israel v. Wood Dolson Co., 1 N Y 2d 116,119-120 [1956].) Defendants suggest that the earlier rulings of the court in Albany including opinions and orders issued during the pendency of the litigation there constitute the law of the case, but it does not appear necessary to reach this point. There should be an end to the litigation where it appears that there has been a sufficient opportunity afforded to have a hearing on the issues. The matter must at some time be brought to a conclusion. Plaintiff appears to have had its ‘ ‘ day ’ ’ in court.
Plaintiff’s assertion that there is a constitutional issue is not well founded, nor does it lie with the plaintiff to make the claim. The rights in question are those of citizens, bondholders, and others, and not the constitutional rights of the Board of Education. (Board of Educ. v. Allen, 27 A D 2d 680 [3d Dept., 1967], mot. to app. den. 19 N Y 2d 580; Board of Educ. of Union Free School Dist. No. 6, Cortlandt v. Board of Educ. of Union Free School Dist. No. 7, 76 App. Div. 355 [2d Dept., 1902], affd. 179 N. Y. 556 [1904].)
*71 Allowing for the fact that there now may he a modification of the earlier doctrine regarding the status of a school hoard to assert a constitutional proposition, the modification does not appear to apply in this case. In Board of Educ. of East Green-bush v. Allen (20 N Y 2d 109 [1967]) the majority opinion did not pass directly upon the question of the standing to sue. However, the factual situation there and the dissenting opinion of Judge Van Voobhis indicate that the board was accorded standing to sue because a statute gave the board members an affirmative obligation which appeared to them to be illegal by reason of a constitutional prohibition against their acts. Here, the rights and obligations asserted are not those of the school board or its members. The board is a purely statutory creature which is as a matter of law a part of the Department of Education of the State of New York. (Lanza v. Wagner, 11 N Y 2d 317.) Hence, the Union Free Board has no standing to raise the constitutional issue. However, were the question properly before this court, it is obvious that the merits of the constitutional point are wanting; the creation of a Central District and its impact upon the financial and administrative aspects of the area affected, do not give rise to a claim of unconstitutionality. (Board of Educ. of Union Free School Dist. No. 6 v. Board of Educ. of Union Free School Dist. No. 7, supra; Gardner v. Ginther, 232 App. Div. 296 [4th Dept., 1931], affd. 257 N. Y. 578; Matter of Board of Educ. v. Wilson, 303 N. Y. 107 [1951]; Matter of Bd. of Educ. v. Allen, 6 A D 2d 316, affd. 6 N Y 2d 871, app. dsmd. 361 U. S. 535 [1960].)
In view of the foregoing conclusions it is not necessary for this court to reach the question of whether section 3813 of the Education Law requires a claim of this nature to be first submitted to the Central School Board. Certainly the clause is broad and could be so read. However, the larger question here is whether the courts in this State should continue to be involved in what are after all fairly technical details of the transitional stage of school organization, involving as they do professional skills of one of the executive departments of the State of New York. The office of the Commissioner of Education is empowered to deal with these problems both administratively and legally. (See Matter of Levert v. Gavin, 39 Misc 2d 569 [Sup. Ct., Suffolk County, 1963]; Matter of Leeds v. Board of Educ., 19 Misc 2d 860 [Sup. Ct., Nassau County, 1959], affd. 9 A D 2d 905 [1957].) The presence of legal questions is not enough to deprive the Commissioner of his jurisdiction. (Matter of Levitch *72 v. Board of Educ., 243 N. Y. 373, 375 [1926].) The plaintiff has received an opinion from the Commissioner of Education on one of the activities it has conducted.' Finding the opinion not to its liking, plaintiff avoided the expeditious administrative route for attending to this dispute. It would appear to this cburt that the ruling or opinion of the administrative body charged with the discharge of legal functions under the laws of the State is entitled to something more than casual treatment (Matter of Armitage v. Board of Educ., 122 Misc. 586 [Sup. Ct., Cayuga County, 1924], affd. 210 App. Div. 812, affd. 240 N. Y. 548.)
Declaratory judgments are regarded as extraordinary relief and available only where resort to ordinary actions or proceedings would not afford adequate relief. (Gaynor v. Rockefeller, 21 A D 2d 92 [1st Dept., 1964], affd. 15 N Y 2d 120.)
Since the plaintiff has an available forum which appears adequate to afford a remedy the plaintiff will not be harmed by a denial in this forum. (Matter of French v. Pospisil, 39 Misc 2d 126 [Sup. Ct., Suffolk County, 1963].) There is here no showing of any harm to the plaintiff, nor any illegal act by the defendant. There is an administrative remedy available for disputes of this type. The motion of the defendant to dismiss the complaint is granted.